*Notice:* This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| TESORO CORPORATION AND SUBSIDIARIES, | ) ) ) | Supreme Court No. S-14326 |
| Appellants, | ) ) | Superior Court No. 3AN-09-08897 CI |
| v. | ) ) | O P I N I O N |
| STATE OF ALASKA, DEPARTMENT OF REVENUE, | ) ) ) | No. 6838 – October 25, 2013 |
| Appellee. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Fred Torrisi, Judge.

Appearances:   Mark Wilkerson, Wilkerson Hozubin, Anchorage, Gregory A. Castanias, Jones Day, Washington, D.C., and David E. Cowling and Roy T. Atwood, Jones Day, Dallas, Texas, for Appellants. R. Scott Taylor, Senior Assistant Attorney General, Anchorage, Deborah J. Stojak, Assistant Attorney General, and Michael C. Geraghty, Attorney General, Juneau, and Louisiana W. Cutler, Jennifer M. Coughlin, and Serena S. Green, K&L Gates LLP, Anchorage, for Appellee.

Before:   Fabe, Chief Justice, Carpeneti, Winfree, and Stowers, Justices, and Eastaugh, Senior Justice.[*]

EASTAUGH, Senior Justice.

---

[*]     Sitting by assignment made under article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

## I.    INTRODUCTION

Tesoro Corporation challenges income taxes assessed against it by the Alaska Department of Revenue (DOR) for 1994 through 1998. DOR calculated Tesoro's Alaska income by applying a three-factor apportionment formula to Tesoro's worldwide income, including that of its non-Alaskan subsidiaries. Tesoro challenged DOR's apportionment in a trial before an administrative law judge, who ruled that Tesoro was a unitary business that could be subject to formula apportionment, and that DOR could permissibly assess penalties against Tesoro. Tesoro appealed to the superior court, which affirmed.

Tesoro argues here that only the income of its Alaska-based subsidiaries should have been subject to taxation in Alaska because Alaska's tax scheme violates the Due Process and Interstate Commerce Clauses of the United States Constitution. Because Tesoro's business was unitary, we reject Tesoro's challenge to the constitutionality of taxing all of its income under formula apportionment. Because Tesoro lacks standing to challenge the formula's constitutionality, we do not reach the internal consistency issue Tesoro raises. We also conclude that applying the formula to Tesoro satisfied the statutory requirement of reasonableness. Finally, we conclude that DOR permissibly imposed penalties on Tesoro. We therefore affirm the superior court decision that affirmed the administrative law judge's decision and order.

## II.    FACTS AND PROCEEDINGS

### A.    Tesoro's Business Activity

At relevant times, Tesoro Corporation was a petroleum company headquartered in San Antonio, Texas.[1] Tesoro had 33 subsidiary corporations that were

---

[1]    Our description of the facts is based on the facts explicitly found by the administrative law judge and the evidence the administrative law judge found persuasive.

organized into five business segments: (1) the Exploration and Production (E&P) segment based in Texas and Bolivia; (2) the Retail and Marketing (R&M) segment based in Alaska;[2] (3) the Marine Services segment based in Louisiana and Texas;[3] (4) the Corporate segment based in Texas; and (5) the Finance segment based in Texas.

Tesoro's board of directors had an active hand in shaping the financial, operational, and managerial decisions for Tesoro's subsidiaries. During the relevant period, the board met almost monthly to discuss and approve various aspects of the subsidiaries' operations. Furthermore, Tesoro's Corporate and Finance segments provided a number of administrative and financial services that were shared across all subsidiaries.

Two developments during the relevant tax years caused the companies within E&P to realize profits greater than those realized by the subsidiaries within R&M. In 1995 Tesoro sold part of its interest in a valuable natural gas field. And in 1996 Tesoro prevailed on a breach of contract claim and later that year sold its remaining interest in the same contract. Those events brought E&P nearly $200 million in revenue. Tesoro's appeal here effectively tries to shield the profits related to those events from taxation in Alaska.

---

[2]    Although E&P and R&M are names the litigants and prior adjudicators have applied to Tesoro's operational segments, this semantic choice should not be read to suggest that the Tesoro subsidiaries within each segment were necessarily somehow distinct from the Tesoro parent company or each other. All subsidiaries within each segment bore the name "Tesoro." For example, the R&M segment included the Tesoro Northshore Company and the Tesoro Alaska Petroleum Company.

[3]    The Marine Services segment was deemed "relatively insignificant" by the administrative law judge. Tesoro asserts that the Marine Services operation is not at issue here, and nothing in DOR's briefing or the orders below suggests otherwise.

## B.     Tesoro's Tax History In Alaska

In 1959 Alaska adopted the Uniform Division of Income for Tax Purposes Act (UDITPA).[4]  UDITPA was drafted and approved by the National Conference of Commissioners on Uniform State Laws in 1957 in an attempt to bring uniformity to state tax codes.[5]  In 1970 Alaska adopted the Multistate Tax Compact, which is a restatement of UDITPA with some minor changes.[6]  The Multistate Tax Compact is codified at AS 43.19.010.  Per AS 43.19.010, article IV, section 9, the portion of a business's total income apportioned to Alaska is determined by "multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is three." The property factor is the fraction of the taxpayer's total property and the property attributable to the taxpayer's business in Alaska; similarly, the sales and payroll factors are fractions of the taxpayer's respective total sales and payroll attributable to the taxpayer's business in Alaska.[7]

Alaska Statute 43.19.010, article IV, section 18 permits DOR to adjust a taxpayer's tax burden if the statutorily mandated apportionment does not "fairly represent the extent of the taxpayer's business activity in this state."  Subsection 18(a) allows DOR to apportion the taxpayer's income based on separate accounting, while subsection 18(c) allows DOR to add "one or more additional factors" to the

---

[4]     Ch. 175, § 1, SLA 1959.

[5]     Larry D. Scheafer, Annotation, *Construction and application of uniform division of income for tax purposes act*, 8 A.L.R. 4th 934 § 2 (1981); *see also* 1 JEROME R. HELLERSTEIN & WALTER HELLERSTEIN, STATE TAXATION ¶ 8.06[3][b], at 8-70 (3d ed. 2012).

[6]     Ch. 124, § 1, SLA 1970; *State, Dep't of Revenue v. Amoco Prod. Co.*, 676 P.2d 595, 598 n.3 (Alaska 1984).

[7]     AS 43.19.010, art. IV, §§ 10, 13, 15.

apportionment formula.[8]  The statute effectively requires that any remedy DOR enforces under section 18 be "reasonable."[9]

Alaska Statute 43.20.144 modifies AS 43.19.010's apportionment scheme for all taxpayers "engaged in the production of oil or gas . . . in this state or engaged in the transportation of oil or gas by pipeline in this state."[10]  Alaska Statute 43.20.144(c) provides three different apportionment formulas for such taxpayers, depending on the nature of the taxpayer's oil or natural gas business in Alaska.  Under AS 43.20.144(c)(1), a taxpayer that only transports oil or gas in Alaska is subject to a two-factor formula based on property and sales.  Under AS 43.20.144(c)(2), a taxpayer that only produces oil or gas in Alaska is instead subject to a two-factor formula based on property and extraction.  Finally, under AS 43.20.144(c)(3), a taxpayer that both transports and produces oil or gas in Alaska is subject to a three-factor formula based on property, sales, and extraction.

From the time it began doing business in Alaska in 1969 until 1994, Tesoro filed its tax returns as a unitary business.  During this period all of Tesoro's corporate income was subject to taxation in Alaska, and the amount actually apportioned to Alaska was determined by the three-factor property, sales, and payroll formula of AS 43.19.010, article IV, section 9.  In 1995 Tesoro purchased the Kenai Pipeline (KPL), the pipeline that serviced its Kenai-based refinery.  As a result of this purchase, Tesoro became a taxpayer "engaged in the transportation of oil or gas by pipeline" in Alaska, and thus became subject to taxation under AS 43.20.144.

---

[8]     AS 43.19.010, art. IV, §§ 18(a), 18(c).

[9]     AS 43.19.010, art. IV, § 18.

[10]     AS 43.20.144(a). AS 43.20.144 was formerly codified as AS 43.20.072 but was renumbered in 2012.

In its tax return for 1995 Tesoro took the position that KPL was not unitary with the remainder of Tesoro's business segments. Tesoro thus claimed that only KPL was subject to taxation under the two-factor property and sales formula specified by AS 43.20.144(c)(1), while Tesoro's remaining business segments were subject to taxation under the three-factor property, sales, and payroll formula specified by AS 43.19.010, article IV, section 9. This was the first time Tesoro had ever asserted in an Alaska tax return that its subsidiaries were not unitary with each other. In its tax returns for 1996 and 1997 Tesoro again took the position that KPL was not unitary with the remainder of Tesoro's subsidiaries. And in those returns Tesoro also asserted for the first time that its Finance segment was not unitary with the remainder of its subsidiaries and as such was not subject to taxation in Alaska at all.

On October 1, 1998, DOR completed an audit of Tesoro's tax returns for the years 1994 and 1995 and rejected Tesoro's position that KPL and the Finance segment were not unitary with the remainder of Tesoro's subsidiaries or each other. DOR's resulting assessment stated that "Tesoro is one unitary petroleum business" and that "the entire group is subject to modified apportionment under AS [43.20.144]." DOR accordingly apportioned all of Tesoro's business income under the two-factor property and sales formula of AS 43.20.144(c)(1) for nine months of 1995 to account for Tesoro's March 1995 purchase of KPL. DOR also disallowed the exemptions for Tesoro's foreign subsidiaries for this same nine-month period.

After receiving this assessment, Tesoro filed its 1998 tax return in which Tesoro again asserted that KPL was not unitary with the remainder of Tesoro's business segments. This return also took the position that the subsidiaries within R&M were not

unitary with the remainder of Tesoro's subsidiaries, including KPL.[11] Thus, this 1998 tax return treated only the R&M subsidiaries and KPL as subject to taxation in Alaska: KPL under AS 43.20.144(c), and the R&M subsidiaries under AS 43.19.010, article IV, section 9. In response, DOR conducted a second audit assessment of Tesoro's tax filings, this time for the years 1996, 1997, and 1998. In the resulting assessment, DOR rejected Tesoro's theory concerning the unitariness of Tesoro's business and reasserted that all of Tesoro's businesses were a single unitary group subject to AS 43.20.144.

But during the interval between DOR's first audit and its second, the Attorney General of Alaska issued an opinion calling into question the constitutionality of AS 43.20.144(c) as applied to businesses that produce oil or gas in state but transport it out of state.[12] In response, DOR issued an advisory letter on November 19, 1999 to all oil and gas taxpayers in Alaska; the letter stated that DOR would exercise its authority under AS 43.19.010, article IV, subsection 18(c) to fashion a remedy to the constitutional infirmity identified by the Attorney General. DOR's letter stated that this remedy would allow a taxpayer that both produced and transported oil or gas to use the three-factor property, sales, and extraction formula of AS 43.20.144(c)(3). The letter stated:

> The department will follow the [Attorney General's] opinion and allow taxpayers to use the three-factor apportionment formula in these circumstances pursuant to the authority of AS 43.19.010 Art. 4, Sec. 18(c). Accordingly, an AS [43.20.144] taxpayer engaged both in the production of oil or gas from a lease or property in any jurisdiction and in the pipeline transportation of oil or gas in any jurisdiction

---

[11] Tesoro took this position informally for the first time on January 6, 1999, in a written statement attached to and incorporated by reference in its request for an informal conference.

[12] 1993-99 FORMAL OP. ATT'Y GEN. 230-31, *available at* 1999 WL 1337804.

may use an apportionment formula consisting of extraction, property and sales . . . .

In its assessment for the years 1996, 1997, and 1998, DOR adhered to its November 19, 1999, letter and applied the three-factor formula of AS 43.20.144(c)(3) (hereinafter "the section 18 remedial formula" or "remedial formula") to Tesoro. DOR also assessed penalties against Tesoro for its repeated unwillingness to recognize KPL as unitary with Tesoro's other subsidiaries.

## C.    Past Proceedings

Tesoro first appealed the assessments for the years 1994 to 1998 during informal conferences with DOR; it next appealed in proceedings before an administrative law judge; it finally appealed to the superior court. The adjudicators at each stage agreed with DOR's initial assessment that Tesoro was a single unitary business during the relevant years; that the three-factor formula applied to Tesoro produced a constitutionally and statutorily fair apportionment of Tesoro's total income; and that Tesoro's conduct in filing its tax returns justified penalties.

Thus, Administrative Law Judge Mark T. Handley conducted a ten-day hearing at which Tesoro and DOR presented testimony from Tesoro employees and executives, DOR auditors, and expert witnesses familiar with Tesoro's business activities. The administrative law judge also reviewed hundreds of exhibits, including Tesoro's internal financial records, Tesoro's public financial filings, correspondence between Tesoro employees, and reports drafted by expert witnesses. In determining that Tesoro's subsidiaries were a unitary business for the relevant years, the administrative law judge made factual findings referring to the evidence and relied heavily on the testimony and reports of two of DOR's expert witnesses: Professors James Smith and Richard Pomp. The administrative law judge found these two witnesses to be "very persuasive," and stated that "these experts demonstrated an impressive understanding of

Tesoro's organization and business activities."  Both experts looked at evidence in the record and found Tesoro to have exhibited functional integration, centralized management, and economies of scale and thus found Tesoro's subsidiaries to be one unitary business.  The administrative law judge found these witnesses were particularly persuasive as compared to Tesoro's witnesses, whom he found "less convincing" because he found Tesoro's witnesses tried to divert focus away from relevant facts and were dismissive of the relevant legal factors.  By contrast, the administrative law judge found that Professors Pomp and Smith identified which facts in the record were significant and that these experts provided "strong, but objective, opinions" as to the import of these facts.

When Tesoro appealed to the superior court, Superior Court Judge Fred Torrisi affirmed the administrative law judge's decision.  The superior court held that Tesoro was a unitary business, that the formula applied to it was not constitutionally unfair, and that penalties were justified.  In its unitary-business holding, the superior court relied mainly on the factual findings of the administrative law judge and cited to the findings of shared administrative and financial services across Tesoro's subsidiaries.

Tesoro now appeals to us.

## III.  STANDARD OF REVIEW

We review questions of law de novo, using our independent judgment.[13] We apply the substantial evidence standard of review to disputed questions of fact in administrative decisions.[14]  In applying this standard, we will not re-weigh evidence or

---

[13]     *Ross v. State, Dep't of Revenue*, 292 P.3d 906, 909 (Alaska 2012); *Harrod v. State, Dep't of Revenue*, 255 P.3d 991, 995 (Alaska 2011).

[14]     *State, Dep't of Revenue v. DynCorp & Subsidiaries*, 14 P.3d 981, 985 (Alaska 2000) (quoting *Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska (continued...)

re-evaluate the fact finder's credibility determinations.[15] Whether Tesoro's business is unitary is a question of law that requires no agency expertise.[16] We will consider the issue de novo, giving only "some weight" to the agency's decision on the matter.[17] Determining the constitutionality of a given statute presents a question of law that we review de novo.[18] Statutory interpretation is also a question of law that we review de novo.[19] In its appeal regarding penalties, Tesoro appears to argue that as a matter of law it cannot be penalized for violating an unconstitutional statute. The penalties appeal therefore presents a question of law: whether Tesoro should have been excused from

---

[14]      (...continued)
1992)) (observing that substantial evidence standard applies to disputed questions of fact in taxpayer's appeal of tax assessment).

[15]      *See McKitrick v. State, Pub. Emps. Ret. Sys.*, 284 P.3d 832, 837 (Alaska 2012) (quoting *Lindhag v. State, Dep't of Natural Res.*, 123 P.3d 948, 952 (Alaska 2005)).

[16]      *Earth Res. Co. v. State, Dep't of Revenue*, 665 P.2d 960, 965 (Alaska 1983) ("[W]e conclude that the question whether a taxpayer's business is unitary is a question of law which does not require agency expertise for its resolution.").

[17]      *See Alaska Gold Co. v. State, Dep't of Revenue*, 754 P.2d 247, 251 (Alaska 1988) (holding that question of whether taxpayer is a unitary business is reviewed de novo giving only some weight to the agency's decision on the matter); *Earth Res. Co.*, 665 P.2d at 964-65 (holding that substitution of judgment standard applies to supreme court's review of agency decision regarding the unitariness of a taxpayer's business).

[18]      *Harrod*, 255 P.3d at 995 (citing *Eagle v. State, Dep't of Revenue*, 153 P.3d 976, 978 (Alaska 2007)) (applying independent judgment standard to constitutional questions in tax assessment appeal).

[19]      *Id.* (citing *Temple v. Denali Princess Lodge*, 21 P.3d 813, 815 (Alaska 2001)) (applying independent judgment standard to questions of law in tax assessment appeal).

paying penalties because one aspect of the tax scheme under which it was penalized was unconstitutional. We review this question de novo.[20]

## IV. DISCUSSION

Tesoro asks us to review three issues on appeal: (1) whether the tax scheme applied by DOR violates the Due Process and Interstate Commerce Clauses of the United States Constitution; (2) whether the section 18 remedial formula is statutorily unreasonable; and (3) whether the penalties DOR assessed against Tesoro are invalid. We consider each issue in turn.

### A. Tesoro's Constitutional Challenge To Formula Apportionment Fails.

Under the Due Process and Interstate Commerce Clauses of the United States Constitution, a state "may not tax value earned outside its borders."[21] The central inquiry is "whether the state has given anything for which it can ask return."[22] But the United States Supreme Court has long recognized that taxing multi-state companies using strict geographic accounting fails to account for "the many subtle and largely unquantifiable transfers of value that take place among the components of a single enterprise."[23] The unitary business/formula apportionment method of taxation is meant to remedy this problem.[24] Under this method, a taxing state first identifies the unitary business of which the taxpayer's in-state activities are a part and then apportions the

---

[20]     *Ross v. State, Dep't of Revenue*, 292 P.3d 906, 909 (Alaska 2012); *Harrod*, 255 P.3d at 995 (Alaska 2011).

[21]     *ASARCO Inc. v. Idaho State Tax Comm'n*, 458 U.S. 307, 315 (1982).

[22]     *Wisconsin v. J.C. Penney Co.*, 311 U.S. 435, 444 (1940).

[23]     *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 164-65 (1983).

[24]     *Id.* at 165.

income of this unitary business to the taxing state according to a set formula.[25] Tesoro challenges both the administrative law judge's finding that all of Tesoro's subsidiaries constituted a single unitary business and the administrative law judge's application of the three-factor apportionment formula of AS 43.20.144(c). We hold that Tesoro was a unitary business amenable to formula apportionment and that Tesoro lacks standing to contest the application of the AS 43.20.144(c) three-factor apportionment formula.

> **1.    The administrative law judge did not err in finding Tesoro to be a single unitary business.**

Tesoro bears the burden of proving by clear and cogent evidence that the state tax results in extraterritorial values being taxed.[26] In order for a business to be unitary, and thus amenable to formula apportionment, there must be flows of value between the parent and subsidiary.[27] The United States Supreme Court has distinguished these flows of value from the mere passive flow of funds that arises from any parent-subsidiary relationship.[28] Three "factors of profitability" indicate a unitary business: functional integration, centralization of management, and economies of scale.[29]

Tesoro argues that its involvement in its subsidiaries was the type of passive investor-investment relationship that exists between any parent and subsidiary. DOR

---

[25]    *See id.*

[26]    *Id.* at 164 (quoting *Exxon Corp. v. Wis. Dep't of Revenue*, 447 U.S. 207, 221 (1980)).

[27]    *Id.* at 178-79.

[28]    *Id.* at 166.

[29]    *Id.* at 181 (quoting *Mobil Oil Corp. v. Comm'r of Taxes*, 445 U.S. 425, 438 (1980)).

counters that there were sufficient flows of value across Tesoro's business segments to justify the administrative law judge's finding of unitariness in this case.

Although Tesoro asserts that it is not disputing the administrative law judge's factual findings, it repeatedly makes assertions factually at odds with those findings. The administrative law judge heard ten days of testimony and reviewed more than 30,000 pages of documents. The administrative law judge also relied extensively on the report and testimony of Professor Smith, who reviewed much of the voluminous record before providing his expert opinion as to the nature of Tesoro's business. To the extent that Tesoro explicitly or implicitly challenges the administrative law judge's findings, we must determine whether substantial evidence supports those findings.[30] Applying the substantial evidence standard, we reject any challenge to the administrative law judge's factual findings. The administrative law judge relied on the facts discussed by Professor Smith because he found Professor Smith to be persuasive and the facts identified by Professor Smith to be relevant. By contrast, the administrative law judge found Tesoro's witnesses to be unconvincing, as they seemed to ignore the relevant facts in the record. Evidence in the record supports the facts reported by Professor Smith and found by the administrative law judge. It is not our place to re-weigh evidence or re-evaluate the credibility determinations of the administrative law judge.[31]

As we explain below, Tesoro has not carried its burden of proving the non-unitary nature of its business. The facts as found by the administrative law judge show

---

[30]     *State, Dep't of Revenue v. DynCorp & Subsidiaries*, 14 P.3d 981, 985 (Alaska 2000).

[31]     *See McKitrick v. State, Pub. Emps. Ret. Sys.*, 284 P.3d 832, 837 (Alaska 2012) (quoting *Lindhag v. State, Dep't of Natural Res.*, 123 P.3d 948, 952 (Alaska 2005)).

that Tesoro's relationship with its subsidiaries fits within relationships that we and the United States Supreme Court have held to be unitary.

### a.     Tesoro's subsidiaries were functionally integrated.

Tesoro contends that the subsidiaries within the E&P and R&M segments were not functionally integrated because there was no overlap in any "actual function" between them. Tesoro admits that it provided its subsidiaries with shared administrative and financial services, but asserts that the absence of "synergistic operations" between the subsidiaries within E&P and R&M is fatal to finding functional integration.

The pertinent case law refutes Tesoro's restrictive interpretation of the functional integration concept. In *Container Corp. of America v. Franchise Tax Board*, the United States Supreme Court held a paperboard company to be unitary with its subsidiaries where the parent provided the subsidiaries with loans and loan guarantees, occasional assistance in obtaining equipment and fulfilling personnel needs, and general oversight and guidance.[32] In *Alaska Gold Co. v. State, Department of Revenue*, we upheld a finding of functional integration where the parent approved capital expenditures greater than $100,000, handled salaries and payroll for executives, and guaranteed the subsidiaries' lease obligations.[33] And in *Earth Resources Co. of Alaska v. State, Department of Revenue*, we upheld a unitary business finding where the parent provided the subsidiary with loans and loan guarantees, a uniform pay scale, salary guidelines, and a uniform retirement plan.[34] In each of these cases the courts examined the same sorts

---

[32]     463 U.S. at 179-80.

[33]     754 P.2d 247, 252 (Alaska 1988).

[34]     665 P.2d 960, 969 (Alaska 1983).

of administrative and financial services that Tesoro argues are irrelevant. In two of these cases there was little or no "operational synergy."[35]

Tesoro provided services to its subsidiaries to a greater degree than did the taxpayers in all of these cases combined. Like the taxpayers in *Container Corp.*, *Alaska Gold*, and *Earth Resources*, Tesoro provided its subsidiaries with both loans and loan guarantees. As the administrative law judge observed:

> Tesoro's business segments jointly guaranteed major loans or "credit facilities" during the audit period. CEO [Bruce] Smith explained that the purpose of these credit facilities was to keep the entire corporation going and that the credit facilities were not dedicated to a particular business segment. Tesoro's central management used the funds obtained from the major credit facilities to finance purchases by individual subsidiaries as well as to provide working capital for general corporate purposes. The heads of R&M and E&P were not involved in obtaining financing to fund their operations because these functions were performed by CEO [Bruce] Smith, Mr. [William] Van Kleef and the corporate finance department.

(Footnotes omitted.)

In the portion of his report cited by the administrative law judge, Professor Smith noted that these credit facilities were secured using corporate-wide assets and that the funds were made available to the subsidiaries as needed.

Tesoro's involvement in financing the subsidiaries went beyond merely loaning money to the subsidiaries. As the administrative law judge explained:

---

[35]     *See Container Corp. of Am.*, 463 U.S. at 172 ("Sales of materials from appellant to its subsidiaries accounted for only about 1% of the subsidiaries' total purchases."); *Earth Res. Co. of Alaska*, 665 P.2d at 968 ("[T]here is no highly integrated flow of business between the business entities. . . .").

Various bank accounts were used during the course of the audit period to receive customer remittances. However, at any one time, a single, shared bank account was used to receive remittances from customers of all the subsidiaries. Funds belonging to the respective subsidiaries were all directed to the same account so that these funds were available to fund the working capital needs of all Tesoro subsidiaries.

(Footnotes omitted.)

In the portion of his report cited by the administrative law judge, Professor Smith elaborated on how cash management was functionally integrated across subsidiaries. He explained that because Tesoro set overall limits on capital expenditures, capital investments made by one subsidiary had to be offset by investments in other subsidiaries.

Thus, Tesoro exercised near-complete control over the funding of subsidiary operations. Tesoro pooled customer remittances from all its subsidiaries into a shared bank account and then distributed this money back to the subsidiaries. There was evidence that local management had no knowledge or control of the sources of their operational funds. Furthermore, Tesoro controlled the capital investments made by each subsidiary and set an overall limit on capital investment across subsidiaries.

Like the taxpayers in *Alaska Gold* and *Earth Resources*, Tesoro also provided guidance on personnel matters. The administrative law judge found that Tesoro's human resources department provided uniform stock option plans, benefits, and salary guidelines across subsidiaries.

Moreover, like the taxpayer in *Container Corp.*, Tesoro provided its subsidiaries with general oversight and guidance. As described in more detail below, the administrative law judge found that Tesoro's board of directors was active in overseeing

operations of the subsidiaries. The Tesoro board reviewed and approved annual operating budgets, major expenses, and specific projects for the subsidiaries.

Tesoro's involvement with its subsidiaries went beyond what was held to be sufficient in the three cases cited above. The administrative law judge found that Tesoro also provided its subsidiaries with uniform services in the fields of environmental compliance and safety, information services and technology, internal auditing, legal affairs, insurance, risk management, purchasing, and accounting. These shared services refute Tesoro's assertion that its subsidiaries were not functionally integrated.

Tesoro argues that because its witnesses testified that the value of the administrative services it provided to its subsidiaries accounted for only a "trifling" one to two percent of its overall costs, these services do not indicate functional integration. But the administrative law judge did not credit the testimony Tesoro cites for this proposition; he instead found the value of the relevant services to be $100 million over the five audited years. Tesoro also contends that the administrative law judge, in calculating the flow of value created by these services, erroneously relied on the price Tesoro charged its subsidiaries for these services, rather than the difference between the price Tesoro charged and the price the subsidiaries would have been charged via arms-length transactions in the open market. Tesoro's view of the law would mean that had Tesoro charged its subsidiaries market prices for these shared services, there would have been no flow of value. But in *Alaska Gold* we stated that even if the goods and services provided by parent to subsidiary were priced "at prevailing market prices, they [were] nonetheless evidence that the companies were not acting independently."[36] Regardless, the administrative law judge *did* find that significant flows of value existed because he

---

[36]     754 P.2d at 252.

found that the prices Tesoro charged its subsidiaries for administrative and financial services did not accurately quantify the services' actual value.

Tesoro further argues that there was no functional integration across subsidiaries because, it asserts, each subsidiary had "autonomous local management that made all day-to-day decisions." This contention, even if factually correct, would not be dispositive. In *Container Corp.*, the United States Supreme Court upheld a finding of functional integration even though the parent company handled only "major problems and long-term decisions" and "day-to-day management of the subsidiaries" was left to local management.[37]

### b.     Tesoro centrally managed its subsidiaries.

Tesoro argues that no centralized management existed during the relevant period because it had no major role in the operational matters of its subsidiaries. Tesoro instead presents itself as a mere financial overseer, responsible only for capital structure, major debt, and dividends.

But the administrative law judge found that Tesoro's role was in fact much broader than this. During the relevant period, all of Tesoro's subsidiaries were governed by Tesoro's very active board of directors. The administrative law judge found that Tesoro's board met frequently to make all major financial and operational decisions for the subsidiaries. In making this finding, the administrative law judge found relevant the testimony of two senior Tesoro executives who discussed how their operational expertise and management assistance benefitted E&P and R&M. Furthermore, in the portion of his testimony cited by the administrative law judge, Professor Smith estimated that Tesoro's board met almost monthly to discuss issues regarding the subsidiaries. By contrast, the administrative law judge found that the boards of the subsidiaries that

---

[37]     463 U.S. at 172.

comprised E&P and R&M never met during the relevant period and that these subsidiaries' boards instead acted by signing written consent resolutions handed down to them by Tesoro's corporate arm.

In the portion of his testimony cited by the administrative law judge, Professor Smith also gave examples of the specific projects that Tesoro's corporate board discussed and approved. Many of these were Alaska-based projects. For example, the Tesoro board discussed increasing the frequent-filler program at Alaskan Tesoro service stations, expanding Tesoro's asphalt sales in Alaska, upgrading the Girdwood service station, increasing home-heating sales in Fairbanks, and expanding the Alaskan hydrocracker plant and the effects that expansion would have on the jet fuel market in Anchorage. Tesoro was not a passive rubber-stamp of any independent decisions by the subsidiaries. For example, Professor Smith testified that in 1997 Tesoro's corporate board actually sent back the annual budget submitted by R&M and required revisions. This hands-on Tesoro involvement in Alaskan business refutes any claim that Tesoro's Alaska-based subsidiaries should have been treated as somehow insulated from the rest of Tesoro's business enterprise.

### c.    Tesoro's business exhibited economies of scale.

Tesoro argues that there were no economies of scale because the interaction between parent and subsidiaries during the taxing period represented flows of funds, not flows of value.

But the administrative law judge found that Tesoro experienced significant cost savings by providing its subsidiaries with centralized services instead of leaving each segment to source these services itself. In the portion of his report the administrative law judge cited for this proposition, Professor Smith observed that eliminating administrative redundancies and offering consolidated services saved Tesoro $2.24 million a year. Professor Smith further observed that this figure amounted to

approximately 10% of the value of providing these services in total. The administrative law judge also found that providing these services created further unquantifiable flows of value by allowing local management to focus on day-to-day business operations without worrying about these administrative and financial matters.

Furthermore, in *Earth Resources* we upheld a finding that economies of scale existed because the subsidiary was able to receive financing at lower rates due to the parent's ability to negotiate lower interest rates for all subsidiaries than any subsidiary could have negotiated on its own.[38] Here the administrative law judge explicitly credited Professor Smith's testimony on the subject and found that Tesoro and its subsidiaries experienced approximately $30 million in interest savings over the five audited years through the use of shared credit facilities. In fact, in the cited portion of his testimony, Professor Smith explained that Tesoro Alaska was able to obtain commercial credit from BP for the shipment of crude oil only after Tesoro provided a letter of credit.

### d. Tesoro's other arguments against a unitary finding are unpersuasive.

Tesoro asserts that the case most analogous to the facts here is *F. W. Woolworth Co. v. Taxation & Revenue Department of New Mexico*.[39] But we consider *Woolworth* to be distinguishable in every material respect. The United States Supreme Court held there that "*no* phase of any subsidiary's business was integrated with the parent's."[40] In so holding, the Court noted the absence of the very administrative and

---

[38]     665 P.2d at 970.

[39]     458 U.S. 354 (1982).

[40]     *Id.* at 365 (emphasis in original).

financial services present here.[41]  Furthermore, in *Woolworth* the parent did not control subsidiary funds.  Instead, each subsidiary "was responsible for obtaining its own financing from sources other than the parent."[42]  Finally, in *Woolworth* the parent had no involvement in overseeing subsidiary operations.[43]  Here Tesoro was active in overseeing subsidiary operations.

Tesoro also argues that vertical or horizontal integration is a necessary condition for finding a unitary business.  Tesoro cites no case that affirmatively establishes this principle, but asserts that it must be true because no United States Supreme Court case denies it.  Tesoro's position is problematic for two reasons.  First, the United States Supreme Court has been reluctant to issue bright-line rules such as the one Tesoro proposes, saying instead that the mutual interdependence necessary for a unitary business finding can arise in "any number of ways."[44]  Second, in *Earth Resources* we upheld a unitary business finding even where there was "no highly integrated flow of business between the business entities."[45]  We decline Tesoro's invitation to overrule past precedent in order to enforce the negative, and unsupported, inference Tesoro would read into the case law.  For these reasons, we hold that Tesoro was a single unitary business throughout the relevant period.

---

[41]     *Id.* at 365-67 (holding businesses not unitary where there was absence of centralized accounting, legal counsel, financing, and purchasing).

[42]     *Id*. at 366.

[43]     *Id*. at 367-68.

[44]     *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 179 (1983).

[45]     *Earth Res. Co. of Alaska v. State, Dep't of Revenue*, 665 P.2d 960, 968 (Alaska 1983).

We recognize that one respected treatise has questioned our holding that the two businesses in *Earth Resources* constituted a unitary enterprise.[46] We read that criticism to stem from the authors' opinion as to what constitutes sound state tax policy, not the case-based requirements of the federal constitution.[47] Tesoro's appeal from DOR's unitary business finding turns only on federal constitutional grounds. There is no issue before us about whether a different tax policy would be preferable. The legislative and executive branches made the controlling policy choices. The only question for us in this case is whether those choices satisfy the federal constitution.

---

[46]    1 JEROME R. HELLERSTEIN & WALTER HELLERSTEIN, STATE TAXATION ¶ 8.10[2][a][ii], at 8-159 to 8-162 (3d ed. 2012).

[47]    The commentator's analysis is based on his "operational interdependency test." *Id*. ¶ 8.10[2][a][ii], at 8-160 nn.697-98 (citing ¶ 8.09[4] of treatise). This test explicitly rejects the United States Supreme Court's holding in *Container Corp*. *Id*. ¶ 8.04[c], at 8-147 ("The fact that there may be a 'flow of value' among the business segments in a sense sufficient to treat the business segments as unitary under federal constitutional standards does not, in and of itself, justify treating such income as apportionable as a matter of sound tax policy."). The treatise, however, acknowledges that other states have adopted a broader view of the unitary business principle. *Id*. ¶ 8.03, at 8-139 n.619 (citing cases from California, Kansas, Oregon, Utah, and Wisconsin as applying the broad approach). Those states that have adopted the operational interdependency test have done so as a matter of state law. *See, e.g.*, *State ex rel. Ariz. Dep't of Revenue v. Talley Indus., Inc.*, 893 P.2d 17, 24-25 (Ariz. App. 1994); *Cox Cablevision Corp. v. Dep't of Revenue*, No. 3003, 1992 WL 132428, at *3 (Or. T.C., June 10, 1992). Moreover, the treatise praises the superior court's opinion in this case, describing that opinion as "extremely thoughtful, thorough, and fact-intensive." *Id*. ¶ 8.10[2][a][iii], at 8-162. In this regard we agree with the treatise: Judge Torrisi's opinion is commendable.

**2.** **Tesoro lacks standing to challenge the internal consistency of Alaska's tax scheme because Tesoro does not demonstrate that it was injured by any inconsistency in this scheme.**

Having affirmed the determination that Tesoro's subsidiaries constituted a single unitary enterprise, we must next address Tesoro's argument that the apportionment scheme applied by DOR was internally inconsistent and thus violated the Due Process and Interstate Commerce Clauses of the United States Constitution. As the United States Supreme Court stated in *Container Corp.*:

> [A]n apportionment formula must, under both the Due Process and Commerce Clauses, be fair. The first, and again obvious, component of fairness in an apportionment formula is what might be called internal consistency — that is the formula must be such that, if applied by every jurisdiction, it would result in no more than all of the unitary business's income being taxed.[48]

The test for internal consistency posits a situation in which every jurisdiction applies the tax at issue; the test then determines whether under such circumstances more than 100% of the taxpayer's income would be subject to taxation.[49] The hypothetical situation envisioned by the internal consistency test is valuable because it allows courts to identify when "a State is attempting to take more than its fair share of taxes from the interstate transaction."[50] In applying this test, courts are attempting to prevent the taxing state from "overreaching" such that "the portion of value by which one State exceed[s] its fair share [is] taxed again by a State properly laying claim to it."[51]

---

[48]    463 U.S. at 169 (citations omitted).

[49]    *See id.*

[50]    *Okla. Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 185 (1995).

[51]    *Id.* at 184-85.

Tesoro argues that Alaska's tax scheme is unconstitutional because it potentially applies two different formulas — either the section 18 property, sales, and extraction formula or the section 9 property, sales, and payroll formula — and thus could result in more than 100% of a taxpayer's income being taxed. Tesoro is correct that DOR's taxing scheme applies one of two different apportionment formulas depending on a taxpayer's in-state business activity. Per the terms of DOR's November 19, 1999 advisory letter, the section 18 remedial formula applies to any "AS [43.20.144] taxpayer" that both produces and transports oil or gas. But this formula only applies to a taxpayer that conducts at least one of these activities in Alaska, because AS 43.20.144 only applies to such taxpayers.[52] Thus, a taxpayer that both produces and transports oil or gas anywhere and also does at least one of these activities in this state is taxed under the section 18 remedial formula that includes the property, sales, and *extraction* factors.[53] But a taxpayer that both produces and transports oil or gas but does neither of those activities in this state is instead taxed under the formula prescribed in AS 43.19.010, article IV, section 9 that includes the property, sales, and *payroll* factors.

DOR urges us to ignore this feature of Alaska's tax code and consider only the specific three-factor formula that it applied to Tesoro in Alaska, not the entire tax scheme that also contains a different formula that potentially applies, depending on which activities the taxpayer conducts in the taxing jurisdiction. DOR thus assumes, for purposes of determining consistency, that every jurisdiction taxing Tesoro would use the section 18 remedial formula. This assumption fails to recognize that jurisdictions where

[52] *See* AS 43.20.144(a) (stating that section .144 applies only to taxpayers "engaged in the production of oil or gas . . . in this state or engaged in the transportation of oil or gas by pipeline in this state").

[53] Because it is the only fact pattern relevant to this appeal, we will limit our discussion to taxpayers, like Tesoro, that both transport and produce oil or gas.

Tesoro neither produces nor transports oil or gas would instead tax Tesoro under the AS 43.19.010, article IV, section 9 formula. In effect, DOR would look narrowly at the formula it actually applied here rather than at the broader statutory scheme. This is not the test. In *Armco Inc. v. Hardesty*, the United States Supreme Court assessed an internal consistency challenge to a West Virginia tax scheme in which businesses that manufactured in state were subject to a manufacturing tax, businesses that sold goods at wholesale in state were subject to a wholesaling tax, and businesses that did both activities in state were exempt from the wholesaling tax but subject to the manufacturing tax.[54] The tax scheme was analogous to the one at issue in this case in that taxpayers were subject to different tax formulas depending on the extent of their in-state business activities.[55] A taxpayer that sold at wholesale in state but manufactured out of state challenged the constitutionality of West Virginia's scheme.[56] If DOR were correct, the United States Supreme Court should have scrutinized only "the formula actually used" for the taxpayer: the exemptionless wholesaling tax. It did not. The Court instead scrutinized the "precise scheme" and held that the scheme was internally inconsistent because under it taxpayers "from out of State [would] pay both a manufacturing tax and a wholesale tax while sellers resident in West Virginia [would] pay only the manufacturing tax."[57] The Court was specifically interested in the potential for differential application of the various formulas.[58] We therefore reject DOR's invitation

---

[54] 467 U.S. 638 (1984).

[55] *Id*. at 642.

[56] *Id*. at 639-41.

[57] *Id*. at 644.

[58] *Id*.

to consider only the particular three-factor formula applied here; we instead look at the precise two-formula scheme at issue when evaluating Tesoro's internal consistency challenge.

On appeal, Tesoro bases its internal consistency argument on an example that illustrates the property, sales, extraction, and payroll factors for a hypothetical taxpayer that is amenable — as was Tesoro — to taxation in Alaska, Texas, and California. Per Tesoro's hypothetical example, the taxpayer is subject to the property, sales, and extraction formula in Alaska and Texas, and is subject to the property, sales, and payroll formula in California (where it neither produces nor transports oil or gas). The example's choice between different apportionment formulas causes 106.7% of the hypothetical taxpayer's income to be taxed in total. In its opening brief, Tesoro appears to argue that this hypothetical taxpayer bears no specific relationship to Tesoro. Tesoro there argues only that the example shows how DOR's proposed tax structure *could* result in double taxation if it were applied to "a business with production and/or pipeline activities outside but not inside Alaska." Tesoro was not such a business during the contested years because it owned KPL, an Alaska-based pipeline, and Tesoro did not otherwise assert that its hypothetical example in fact described Tesoro's actual situation. Although we reserve judgment on the issue, the only state to have reached the issue rejected a taxpayer's argument that internal inconsistency can be demonstrated by applying a tax scheme to a purely hypothetical taxpayer rather than the actual taxpayer.[59]

In its reply brief, Tesoro subtly refines its argument. It there contends that the example in its opening brief was meant to illustrate Tesoro's actual business situation and thus that the example showed that if all states adopted Alaska's tax scheme Tesoro

---

[59] *See In re Alt. Minimum Tax Refund Cases*, 546 N.W.2d 285, 290-91 (Minn. 1996).

"*would* face an unconstitutional apportionment of more than 100% of its income."[60] (Emphasis added.)

We will address arguments that a party has properly asserted and briefed and decline to address arguments that it has not.[61] The taxpayer bears the burden of establishing the internal inconsistency of the challenged tax statute.[62] Tesoro has alleged an internal consistency violation exclusively in context of the specific hypothetical facts set out in its example. Accordingly, we will address the internal consistency argument under the assumption that the information in the example is substantially similar to Tesoro's actual business situation. We consider Tesoro to have waived any other internal consistency challenge to Alaska's tax scheme.

Because Tesoro has not explained how it has been harmed by any internal inconsistency in Alaska's tax scheme, Tesoro lacks standing to raise its internal consistency argument. "Standing is a rule of judicial self-restraint based on the principle

---

[60] Tesoro has a colorable claim that it has been making this argument all along. Like Tesoro, the hypothetical taxpayer exemplified in its opening brief is taxed under the property, sales, and extraction formula in Alaska and thus, like Tesoro, must have produced or transported oil or gas in Alaska. Confusingly, the text of Tesoro's opening brief describes the exemplified taxpayer as having no production or transportation inside Alaska. Nonetheless, the example itself supports an assertion — refined in Tesoro's reply brief — that the example illustrates Tesoro's actual situation even though the text of Tesoro's opening brief suggests otherwise. We therefore assume that Tesoro's reply brief permissibly refines its prior argument, and thus preserves the contention for appellate review.

[61] *See, e.g.*, *McGraw v. Cox*, 285 P.3d 276, 281 (Alaska 2012).

[62] *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 170 (1983) (quoting *Moorman Mfg. Co. v. Blair*, 437 U.S. 267, 274 (1978)).

that courts should not resolve abstract questions or issue advisory opinions."[63] In order to have interest-injury standing, a plaintiff must have an interest adversely affected by the complained-of conduct.[64] Tesoro complains that DOR's tax scheme is constitutionally infirm because the scheme chooses between two different apportionment formulas. But Tesoro has not shown that it has been adversely affected by this choice. Instead, Tesoro's example demonstrates that DOR applied the formula that was *more favorable* to Tesoro. Its example states that the property, sales, and extraction formula allowed 46.7% of its income to be subject to taxation in Alaska. But its example also demonstrates that 65% of Tesoro's total income would have been subject to taxation in Alaska under the property, sales, and payroll formula.[65] The 6.7% of double taxation that Tesoro's example identifies is the amount by which California's hypothetical property, sales, and payroll apportionment would exceed California's hypothetical property, sales, and extraction apportionment. As footnote 65 indicates, in presenting its example, Tesoro has not demonstrated that the inconsistency it identifies has increased its tax

---

[63] *Friends of Willow Lake, Inc. v. State, Dep't of Transp. & Pub. Facilities, Div. of Aviation & Airports*, 280 P.3d 542, 546 (Alaska 2012) (quoting *Law Project for Psychiatric Rights, Inc. v. State*, 239 P.3d 1252, 1255 (Alaska 2010)).

[64] *Id.* (quoting *Keller v. French*, 205 P.3d 299, 304 (Alaska 2009)).

[65] In Tesoro's example the taxpayer's property, extraction, sales, and payroll factors in Alaska are 65%, 0%, 75%, and 55%, respectively. The taxpayer's property, extraction, sales, and payroll factors in Texas are 30%, 100%, 20%, and 25%, respectively. And the taxpayer's property, extraction, sales, and payroll factors in California are 5%, 0%, 5%, and 20%, respectively. Applying the property, sales, and extraction formula in Alaska causes 46.7% ((65% + 0% + 75%) / 3 = 46.7%) of the taxpayer's total income to be subject to taxation in Alaska, while applying the property, sales, and payroll formula in Alaska causes 65% ((65% + 75% + 55%) / 3 = 65%)) to be subject to taxation in Alaska. The hypothetical example demonstrates that the formula Alaska chose to apply is more favorable to Tesoro (taxing 46.7%, rather than 65%, of Tesoro's total income) than the alternative formula.

burden in Alaska. Tesoro therefore lacks standing to raise its internal consistency claim because it has not identified an actual injury it has suffered as a result of the alleged constitutional infirmity.

Tesoro cites *Armco v. Hardesty* for the proposition that it need not show actual double taxation because the constitutional harm under the internal consistency test is the risk of double taxation.[66] In *Armco*, the United States Supreme Court rejected the argument that the taxpayer attacking the West Virginia tax scheme described above was required to show that other states where it did business actually applied a manufacturing tax to it that caused its total tax burden to be higher than the tax burdens of its in-state competitors who benefitted from the challenged exemption.[67] The Court held that if this were the test it "would depend on the shifting complexities of the tax codes of 49 other States, and . . . the validity of the taxes imposed on each taxpayer would depend on the particular other States in which it operated."[68]

To show injury here Tesoro is not required to demonstrate that multiple taxation has resulted because *other* states have treated it unfairly. It must only show that there is a risk of multiple taxation because *this* state, Alaska, has treated it unfairly. But unlike the taxpayer in *Armco*, Tesoro has not made this showing. In *Armco*, the taxpayer was an out-of-state manufacturer that suffered injury because West Virginia refused to grant it a tax exemption that was available to in-state manufacturers.[69] West Virginia could have cured the injury by granting the exemption to the taxpayer regardless of the location of the taxpayer's manufacturing activity. By contrast, Tesoro has suffered no

---

[66]     *Armco v. Hardesty*, 467 U.S. 638 (1984).

[67]     *Id.* at 644-45.

[68]     *Id.* at 645.

[69]     *Id.* at 640-41.

injury as a result of DOR's failure to apply the property, sales, and payroll formula to it because application of this formula in Alaska would have caused Tesoro's Alaska tax burden to increase. The risk of double taxation that Tesoro alleges is not affected by Alaska's choice between two possible three-factor tax formulas. Instead, the risk of double taxation in this case is caused entirely by the possibility that California and Texas may choose tax formulas that would increase Tesoro's tax burden. Because Tesoro has not demonstrated that it has suffered any harm as a result of the alleged internal inconsistency, it has failed to establish its standing in this case. We do not see why a taxpayer should be excused from application of a tax scheme whose alleged internal inconsistency results in no-less-favorable tax treatment than would have resulted from a consistent scheme.

**B.     The Administrative Law Judge Did Not Err In Finding That DOR's Alternative Apportionment Formula Was Reasonable As Applied To Tesoro.**

Alaska Statute 43.19.010, article IV, subsection 18(c) gives DOR the authority to add an additional factor to an apportionment formula if the formula otherwise prescribed by statute does not fairly represent the extent of the taxpayer's in-state business activity. But section 18 permits DOR to apply an alternative formula only "if reasonable."[70] As we have stated in the past, "[i]nherent in the use of formula

---

[70]     AS 43.19.010, art. IV, § 18 provides:

If the allocation and apportionment provisions of this Article do not fairly represent the extent of the taxpayer's business activity in this state, the taxpayer may petition for or the tax administrator may require, in respect to all or any part of the taxpayer's business activity, *if reasonable*:

(a) separate accounting;

(continued...)

apportionment is the legislative decision that a certain degree of distortion will be tolerated."[71] In determining whether the section 18 remedial formula DOR adopted met the statutory "if reasonable" test, the question is whether the formula is within tolerable limits.[72]

DOR argues that the administrative law judge correctly placed the burden on Tesoro to prove the unreasonableness of DOR's remedy. There is contrary authority that indicates that if a taxing state invokes section 18 of the Multistate Tax Compact to deviate from a prescribed tax statute, it bears the burden of proving the reasonableness

---

[70]     (...continued)
        (b) the exclusion of any one or more of the factors;

        (c) the inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in this state; or

        (d) the employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income.

(Emphasis added.)

[71]     *Gulf Oil Corp. v. State, Dep't of Revenue*, 755 P.2d 372, 381 (Alaska 1988). As the United States Supreme Court has stated in applying the external consistency test: "The Constitution does not 'invalidate an apportionment formula whenever it *may* result in taxation of some income that did not have its source in the taxing State.'" *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 169-70 (1983) (quoting *Moorman Mfg. Co. v. Bair*, 437 U.S. 267, 272 (1978)) (emphasis in original) (internal quotation marks and alterations omitted).

[72]     *See Gulf Oil Corp.*, 755 P.2d at 381. Tesoro does not challenge the reasonableness of DOR's conclusion that, given the Department of Law's 1999 opinion that AS 43.20.144(c) is constitutionally infirm as written, it was appropriate for DOR to invoke its authority under section 18 to adopt some remedial deviation from AS 43.20.144(c).

of the proposed alternative.[73]  We do not need to decide whether DOR had this burden, because even if DOR had the burden of proving the reasonableness of its proposed remedy, it met this burden.

**1.      The property and sales factors were reasonable as applied to Tesoro.**

Courts have traditionally judged the reasonableness of an apportionment formula by applying the constitutional test of external consistency.[74]  The external consistency test evaluates whether the tax "reflect[s] a reasonable sense of how [the taxpayer's] income is generated."[75]  Although the constitutional cases are not directly relevant to the statutory question of whether a given formula meets the "if reasonable" test of section 18, they provide useful guidance in deciding this issue.

During the contested years, DOR applied the three-factor property, sales, and extraction formula of AS 43.20.144(c)(3) to apportion Tesoro's income.  Tesoro argues that the property and sales factors were unreasonable as applied to it, and advances three challenges to DOR's calculation of the property factor.

First, Tesoro argues that because the R&M subsidiaries invested in massive infrastructure in Alaska, while the E&P subsidiaries' out-of-state property holdings consisted of leased land and partially owned equipment, the property factor overvalued Tesoro's in-state activities.  Tesoro's argument seems to be that because it owned more property in Alaska than elsewhere, the property factor is distortive.  But the property factor uses a taxpayer's in-state property as an estimate of the "protection, benefits, and

_____

[73]      *See, e.g.*, *Microsoft Corp. v. Franchise Tax Bd.*, 139 P.3d 1169, 1178 (Cal. 2006).

[74]      *See, e.g.*, *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 169 (1983).

[75]      *Id.*

services that the state furnishes to the enterprise and of the costs that the enterprise imposes upon the state."[76] As DOR observes, Tesoro's ownership of "massive infrastructure" in Alaska shows that it made greater use of state protections and benefits in Alaska than in other areas where its property holdings were more modest. There is nothing distortive about attributing Tesoro's tax burden accordingly.

Second, Tesoro argues that DOR's calculation of the property factor unreasonably undervalued its out-of-state assets by calculating their value at cost and not at fair market value. As DOR points out, we have already considered and rejected this argument. In *Gulf Oil*, we declined to value non-producing wells at their market value instead of at their cost.[77] We noted that if we valued one asset in the property factor calculation at market value, we would have to so value all assets.[78] We refused then to assign DOR this "formidable task."[79] Other courts considering this issue have reached the same result.[80] *Gulf Oil* forecloses Tesoro's argument.

Third, Tesoro argues that the property factor was distortive because it excluded intangible property and thus excluded a valuable contract that an E&P subsidiary owned during the relevant period. Excluding intangible property in the calculation of the property factor is a practice that has been universally accepted across

---

[76] 1 JEROME R. HELLERSTEIN & WALTER HELLERSTEIN, STATE TAXATION ¶ 8.06[2], at 8-67 (3d ed. 2012).

[77] *Gulf Oil Corp.*, 755 P.2d at 385-87.

[78] *Id*. at 387.

[79] *Id*.

[80] *See In re Colo. Interstate Gas Co.*, 79 P.3d 770, 786 (Kan. 2003). *See also Chase Brass & Copper Co. v. Franchise Tax Bd.*, 138 Cal. Rptr. 901, 911 (Cal. App. 1977).

states.[81] Most courts have adhered to this general rule even if, as here, the taxpayer asserts that the exclusion of a particularly valuable intangible asset causes unreasonable distortion of the property factor.[82] We are unpersuaded by Tesoro's argument that DOR's adherence to this widely accepted practice was unreasonable.

Tesoro also argues that DOR's calculation of the sales factor is unreasonable because it takes into account gross income and not net profits. Tesoro contends that such a calculation overvalues its business activities in state relative to its activities out of state because its in-state businesses were high volume but low margin, while its out-of-state businesses were low volume but high margin. Again, Tesoro quarrels with universally accepted taxing practice. Every state with a broad-based corporate income tax uses a gross sales or gross receipts factor in its apportionment formula.[83] Furthermore, as DOR observes, the United States Supreme Court has rejected the argument that disparate profits across subsidiaries are indicative of unfair taxation.[84]

Regardless, formula apportionment is meant to measure "the corporation's

---

[81] Walter Hellerstein, *State Taxation of Corporate Income from Intangibles: Allied-Signal and Beyond*, 48 TAX L. REV. 739, 779 (1993) ("No state, however, takes account of intangible property in the property factor of the standard three factor formula, which is limited to the taxpayer's real and tangible personal property.").

[82] *See, e.g.*, *Random House, Inc. v. Comptroller of the Treasury*, 531 A.2d 683, 685-90 (Md. 1987); *Disney Enter., Inc. v. Tax Appeals Tribunal of the State*, 830 N.Y.S.2d 614, 617 (N.Y. App. Div. 2007), *aff'd*, 888 N.E.2d 1029 (N.Y. 2008). *But see Crocker Equip. Leasing, Inc. v. Dep't of Revenue*, 838 P.2d 552, 557-58 (Or. 1992).

[83] 1 JEROME R. HELLERSTEIN & WALTER HELLERSTEIN, STATE TAXATION ¶ 8.06[3], at 8-67 to 8-68 (3d ed. 2012); *id*. at ¶ 9.02, at 9-18 to 9-19 (3d ed. 2011).

[84] *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 181 (1983).

activities within and without the jurisdiction."[85]  Tesoro's sales factor argument is built

on the flawed premise that a business's in-state activities are only as great as the profits

it generates from its in-state activities.  In fact, the sales factor is designed to attribute a

taxpayer's income to the jurisdictions in which its goods and services are consumed.[86]

Tesoro admits that the R&M subsidiaries "sold a large volume of gasoline each day" as

compared to E&P's "small-scale operation," which generated "far more modest" sales.

But Tesoro contends that we should ignore the relative size of R&M's business

operations as compared to E&P's and instead focus on the relative size of the net income

generated by these operations.  We reject Tesoro's argument because we conclude that

a business's in-state activities may be fairly measured by the amount of goods or services

that consumers purchase in state regardless of whether the business later turns a profit

or loss on those purchases.

In support of its position that profits and not sales should be used to

measure in-state business activities, Tesoro cites cases in which other courts have held

that taxing states could vary their apportionment formulas to account for the distortion

caused by including in the sales factor gross sales generated by a corporate treasury

department's short-term investment receipts.[87]  This body of case law is distinguishable

for two reasons.  First, in the cited cases, distortion resulted because the short-term

investments served no operational function and were thus qualitatively different from the

---

[85]     *Id.* at 165.

[86]     1 JEROME R. HELLERSTEIN & WALTER HELLERSTEIN, STATE TAXATION ¶
8.06[3], at 8-68 (3d ed. 2012).

[87]     *See Microsoft Corp. v. Franchise Tax Bd.*, 139 P.3d 1169, 1180 (Cal.
2006); *Am. Tel. & Tel. Co. v. State Tax Appeal Bd.*, 787 P.2d 754, 757 (Mont. 1990);
*Sherwin-Williams Co. v. Johnson*, 989 S.W.2d 710, 712 (Tenn. App. 1998).

companies' other business activities.[88]  There is no risk of similar distortion here because R&M was an operational segment; its sales therefore could reasonably be compared to those of Tesoro's other major operational segment, E&P.  Second, in the cases Tesoro cites no court held that an adjustment was *required*; the courts held instead that an adjustment was constitutionally *permissible*.[89]  Tesoro cites no authority for its position that because one of Tesoro's operational segments was less profitable than the others the sales factor is unreasonably distortive.

### 2.  The overall formula was reasonable as applied to Tesoro.

Tesoro argues that unreasonable distortion can be seen in the disparity between the income subject to taxation under the section 18 remedial formula and the income that would be subject to taxation under separate accounting.  Tesoro asserts that because DOR taxed $89 million in income whereas under separate accounting it would have taxed only $14 million in income, DOR taxed $75 million that was "unquestionably generated" outside Alaska.

Tesoro mistakenly assumes that it is possible to determine where the income of a unitary business is "unquestionably generated."  In *Container Corp.*, the United States Supreme Court stated that the "basic theoretical weakness" of separate accounting is that for a unitary business it is "misleading to characterize the income of

---

[88]  *See Microsoft Corp.*, 139 P.3d at 1180 (limiting holding to circumstances in which sales factor would otherwise include income from "corporate treasury departments whose operations are qualitatively different from the rest of a corporation's business").

[89]  *See id.* at 1178-79; *Am. Tel. & Tel. Co.*, 787 P.2d at 757; *Sherwin-Williams Co.*, 989 S.W.2d at 716.

the business as having a single identifiable 'source.' "[90] Tesoro cites the United States Supreme Court's 1931 decision in *Hans Rees' Sons, Inc. v. North Carolina*[91] for the proposition that a state's apportionment should be struck down if the taxpayer is able to show a large disparity between the income taxed under separate accounting and the income taxed under the state's apportionment formula. But the *Hans Rees' Sons* Court never explicitly held this, and in the years since it decided that case the United States Supreme Court has declined to hold formula apportionment unreasonable even when presented with a large disparity between the income that would have been taxed under separate accounting and the income that was actually taxed under formula apportionment.[92] We also reject the argument that such a disparity, without more, renders an apportionment unreasonable.

### C. The Administrative Law Judge Did Not Err In Finding Penalties To Be Permissible In This Case.

DOR's September 21, 2001 assessment imposed failure-to-pay and negligence penalties against Tesoro. Relying on the 1999 Attorney General's Opinion that AS 43.20.144's tax scheme was unconstitutional, Tesoro argues that as a matter of law it cannot be penalized for failing to pay taxes under an unconstitutional apportionment scheme. We are unpersuaded for two reasons. First, as the United States

---

[90] *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 181 (1983) (quoting *Mobil Oil Corp. v. Comm'r of Taxes*, 445 U.S. 425, 438 (1980)).

[91] 283 U.S. 123 (1931).

[92] *See Trinova Corp. v. Mich. Dep't of Treasury*, 498 U.S. 358, 368-70 & n.8 (1991) (holding taxable income of $221,125,319 under formula apportionment constitutional even when compared to taxable income of -$28,493,861 under separate accounting); *Butler Bros. v. McColgan*, 315 U.S. 501, 505 (1942) (holding taxable income of $1,149,677 under formula apportionment constitutional even when compared to a taxable income of -$82,851 under separate accounting).

Supreme Court has held, a state may require, under threat of penalty, that a taxpayer pay a tax before contesting it.[93] Second, DOR did not assess the penalties because Tesoro failed to acquiesce in AS 43.20.144's apportionment scheme, but because Tesoro failed to acknowledge that KPL was unitary with R&M.

Tesoro repeatedly took the position that its Alaskan refinery was not unitary with the Alaskan pipeline that fed it, despite the obvious invalidity of this position[94] and despite DOR's October 1, 1998 determination that KPL and R&M were unitary. DOR there found that "Tesoro is one unitary petroleum business" and that "the entire group is subject to modified apportionment under AS 43.20.072." Notwithstanding that 1998 finding, Tesoro not only failed to amend its filings for the years 1994-1997 to reflect its unitary business, but it also thereafter filed its 1998 tax return as if KPL were a wholly separate enterprise. DOR's September 18, 2001 assessment imposed penalties against Tesoro for failing to amend its 1995-1997 filings and for again asserting the same, invalid position in its 1998 return. It was not until June 2005 — almost four years after the penalties were assessed and more than six years after the 1998 determination — that Tesoro amended its filings to reflect DOR's 1998 unitary finding. Tesoro's unjustified position would have warranted penalties regardless of what apportionment scheme was ultimately applied to it. DOR permissibly assessed the penalties.

---

[93]     *See, e.g.*, *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, Dep't of Bus. Regulation of Fla.*, 496 U.S. 18, 51 (1990); *see also* AS 43.05.242(g) (requiring payment of tax by litigant disputing tax).

[94]     *See* 1 JEROME R. HELLERSTEIN & WALTER HELLERSTEIN, STATE TAXATION ¶ 8.08[2][a][i], at 8-102 (3d ed. 2012) ("[A]n integrated oil company is the quintessential unitary business.").

## V. CONCLUSION

For these reasons, we AFFIRM the superior court's decision that affirmed the administrative law judge's award of taxes, interest, and penalties.