Monte ALLEN, Appellant,

v.

ALASKA OIL AND GAS CONSERVA-TION COMMISSION, and Phillips Petroleum Company, Appellees.

No. S–8690.

Supreme Court of Alaska.

May 12, 2000.

Paul D. Kelly, Kelly & Patterson, Anchorage, for Appellant.

Robert E. Mintz, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee Alaska Oil and Gas Conservation Commission.

Before MATTHEWS, Chief Justice, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

BRYNER, Justice.

### I. INTRODUCTION

Monte Allen appeals a decision of the Alaska Oil and Gas Conservation Commission dismissing as moot his petition for compulsory unitization of two oil and gas leases that expired the day after Allen petitioned. We hold that the commission has discretion to order unitization effective upon the date of filing of a proper petition and that its exercise of this discretion is a matter for case-specific determination rather than a matter of jurisdiction. Because the commission does not dispute that Allen's petition was proper when filed or that a retroactive unitization order would operate to extend Allen's leases, we reverse its order dismissing his petition as moot.

### II. FACTS AND PROCEEDINGS

This case concerns two ten-year Cook Inlet oil and gas leases that the Alaska Department of Natural Resources granted to Danco, Inc., in September 1986. In 1988 Danco transferred its working interest in the leases to Amoco Production Company, reserving a four and one-half percent overriding royalty interest.[1] Monte Allen acquired a share of that interest in 1989. Arco Alaska and Phillips Petroleum Company eventually acquired the working interest in the leases, which adjoined Arco's and Phillips's unit operations in the North Cook Inlet Unit—a unit already under production.

In April 1996, approximately five months before the leases expired, the Department of Natural Resources issued a report estimating previously undetected reserves of one trillion cubic feet of gas in the North Cook Inlet Pool. Because their leases adjoined the North Cook Inlet unit, Allen and Danco believed that they were "likely beneficiaries of the same gas formation." In the months leading up to the expiration of their leases, they requested that Phillips and Arco agree to a plan that would unitize their interests. The companies denied their requests. On August 30, 1996, one day before the expiration date of the leases, Allen and Danco attempted to extend their leases by petitioning the Alaska Oil and Gas Conservation Commission for compulsory unitization.

The commission at first declined to accept the petition on the ground that Allen and Danco had only a royalty interest in the leases. Allen and Danco appealed to the commission, which provisionally accepted the petition for filing but notified Allen and Danco of two new potential grounds for dismissal:

First, the Commission understands the leases in which you claimed overriding royalty interests expired on August 31, 1996. Since your petition was received on August 30, 1996, it would have been impossible for the Commission to render a decision on the petition before your interests terminated. It would therefore be a futile act to proceed to a hearing on the petition.

Second, AS 31.05.110 allows for the Commission's exercise of compulsory unitization powers only when those owning interests in the tracts of land affected have not agreed to integrate their interests. AS 31.05.110(a). The Commission requires that a person seeking to invoke compulsory unitization demonstrate that good faith efforts at voluntary integration have been made and have failed. No reference to any such efforts appears in your petition.

---

1. See 38 Am.Jur.2d Gas and Oil § 215 (1999) (explaining that an overriding royalty interest is "a percentage of the gross production payable to some person other than the lessor or persons claiming under the lessor").

The commission requested Allen and Danco to respond. They did, asserting that they had made unsuccessful efforts at voluntary unitization and stating that their filing was timely because it preceded the expiration of the leases. In support of this latter position, they cited *Burglin v. State of Alaska,*[2] an earlier case in which the superior court had ruled that a lessee's petition for involuntary unitization filed before the expiration of the petitioner's oil and gas leases "in effect extended the State's jurisdiction over the subject leases so that the State must fully consider the petitions and rule on the merits of Plaintiffs' petitions for involuntary unitization and protection of correlative rights."[3]

The commission subsequently notified Allen and Danco that it would hold a public hearing to address "whether [it] ... should consider the petitioners' petition on the merits in light of the expiration date of the leases ... [;] the Commission intends to recess the hearing before determining whether to proceed to hear the petition on the merits." After the hearing, the commission issued a formal order dismissing the petition. In this order, the commission reasoned that it had no jurisdiction over the petition because a hearing on the merits would be "a futile and wasteful act." For purposes of the order, the commission assumed that "it may issue orders with retroactive effective dates in appropriate circumstances," but noted that "[n]o such circumstances appear here."

Reaffirming the dismissal on its rehearing, the commission expressly rejected the *Burglin* court's analysis, noting reasons of public policy for disallowing lease extensions through compulsory unitization. The commission also questioned Danco's standing to seek compulsory unitization after the expiration of its royalty interest, observing: "when a petitioner can no longer be granted any relief, due to the petitioner's loss of a real stake in the outcome, the matter should be dismissed."

Allen appealed to the superior court, which affirmed, finding that the commission had properly dismissed the petition as moot because the expiration of Allen's leases left him with no interest that he could properly assert before the commission.

Allen appeals.

## III. DISCUSSION

### A. Standard of Review

▮▮▮ Because Allen's appeal presents questions of statutory interpretation that do not involve the special expertise of the commission, this court applies its independent judgment.[4] We will independently review the Commission's determination, giving no deference to the superior court decision as an intermediate court of appeal.[5]

### B. Allen Was an "Interested Person" and Had Standing to Petition for Unitization.

Under AS 31.05.060, the Alaska Oil and Gas Conservation Commission has the power to "act upon its own motion, or upon the petition of an interested person." This provision requires that "[o]n the filing of a petition concerning a matter within the jurisdiction of the commission under this chapter, the commission shall promptly fix a date for a hearing, and shall cause notice of the hearing to be given." Alaska Statute 31.05.110(a) expressly gives the commission jurisdiction over petitions for unitization, providing that when persons owning interests of affected tracts of land fail to agree on unitization, "the commission, upon proper petition, after notice and hearing, has jurisdiction, power and authority, and it is its duty to make and enforce orders and do the things necessary

---

**2.** 3AN–78–2413 CI (Alaska Super., January 29, 1980).

**3.** The court in *Burglin* theorized that "once the unitization petition is timely filed, assuming for the moment it's filed at a time when the owner of the lease has an interest in the lease and therefore qualifies, then ... his rights accrue and the committee should ... hold a hearing [and] make a decision."

**4.** *See State v. Alaska State Employees Ass'n/ AFSCME Local 52,* 923 P.2d 18, 22 (Alaska 1996).

**5.** *University of Alaska v. University of Alaska Classified Employees Ass'n,* 952 P.2d 1182, 1184 n. 6 (Alaska 1998).

or proper to carry out the purposes of this section [governing unitization]."

Citing these provisions, Allen maintains that as an overriding royalty interest holder, he was an "interested person" with standing to petition for compulsory unitization. He contends that because his leases were in effect when he filed his petition, it was a "proper petition" under AS 31.05.110(a), and the committee had a duty, under AS 31.05.060, to "promptly fix a date for a hearing" on the merits of his petition. Allen insists that the commission erred in determining that his leases expired after he filed the petition and that their expiration deprived him of standing to pursue compulsory unitization.

The commission concedes that an overriding royalty holder has standing to petition for unitization under AS 31.05.110 and that Allen was therefore an "interested person" under AS 31.05.060 at the time he filed his petition. "Although Allen seems confused about the Commission's position, the Commission does not dispute that an overriding royalty interest is a sufficient property interest to render someone an 'interested person.'" Indeed, the commission emphasizes that "[t]he Commission's decision from which Allen appeal[s] *assumed* that an overriding royalty owner has standing."

Nor does the commission question that Allen's leases would have been automatically extended by a unitization order entered before the leases expired. Under AS 38.05.180(m), "[a]n oil and gas lease shall be automatically extended if and for so long thereafter as oil or gas is produced in paying quantities." [6] And under AS 31.05.110(m), "[w]ells drilled or operated on any part of [a] unit area no matter where located shall for all purposes be regarded as wells drilled on each separately owned tract within the unit area." Since the drilling unit with which Allen sought unitization was already under

production, a unitization order predating the expiration date of Allen's leases would have resulted in an extension.

Under these circumstances, and given the commission's concession that an overriding royalty interest holder has sufficient interest to petition for forced unitization, we conclude that at the time of its filing Allen's petition for unitization was a "proper petition" under AS 31.05.110(a) and raised "a matter within the jurisdiction of the commission" under AS 31.05.060.[7]

## C. *The Expiration of the Leases Did Not Deprive Allen of Standing or Deprive the Commission of Jurisdiction.*

While acknowledging that Allen initially had standing to petition for mandatory unitization, the commission insists that his petition was properly dismissed as moot after his leases expired:

> The Commission's point was that, if the leases in which Allen owned overriding royalty interests expired "almost as soon as the petition was filed," Allen *lost* his standing at that time. The question presented to the Commission, and now to this Court, is whether the Commission must hear and decide a case after the petitioner no longer has a personal stake in the outcome and cannot benefit from the requested Commission action.

But this reasoning necessarily assumes either that the commission has no authority to issue a retroactive unitization order that would have the effect of reviving the leases or that the question of whether to issue a retroactive order is capable of being decided as a jurisdictional matter—in other words, without a hearing on the merits of Allen's petition for unitization.

As to the first assumption, we note that in dismissing Allen's petition the commission itself assumed that it had the power to issue

---

**6.** Allen's leases included standard clauses mirroring this provision. Danco and Allen also tendered lease payments to extend their lease, but the DNR refunded the payments.

**7.** We need not decide whether overriding royalty owners generally have standing to petition for unitization. Because the commission concedes

the point here, our decision assumes that Allen's ownership of royalty rights makes him "an interested person" under AS 31.05.060 and thus gives him standing to seek unitization. We express no view on how the issue would be decided in the absence of a concession by the commission.

a unitization order that would be effective as of the date of filing of the petition for unitization. Our own analysis of applicable law reveals no sound reason why the commission does not have this power.

Alaska's Administrative Procedure Act generally allows an administrative adjudication to have retroactive effect: "A decision in a primarily judicial proceeding has retroactive effect in the same manner as a decision of a state court." [8] Moreover, with respect to unitization orders, AS 31.05.110(a) specifically empowers the commission "to make and enforce orders and do the things necessary or proper to carry out the purposes of this section." And AS 31.05.110(i) provides that "[p]roperty rights, leases, contracts and all other rights and obligations shall be regarded as amended and modified to the extent necessary to conform to the provisions and requirements of ... any valid and applicable plan of unitization or order of the commission made and adopted under this chapter."

Although we are aware of no published decisions, and the parties point to none, discussing when unitization should become effective, courts in several states have recognized that agencies have power to backdate pooling orders when appropriate to protect the interests of a petitioning party.[9] As the commission recognized in its initial order dismissing Allen's petition, these cases are not directly on point, since they tend to focus on an issue that does not arise in the context of unitization—the need to avoid an unconstitutional taking of property from a petitioner who has been precluded from drilling by a previously issued spacing order.[10]

But while pooling and unitization orders may differ in certain respects, they bear an underlying similarity. The same interests—conservation, efficiency, and fairness—are present in both processes. As one treatise states, "usually questions arising in connection with pooling also arise in connection with unitization, and the significant differences relate to whether pooling or unitization is accomplished by voluntary agreement or compulsory process." [11]

Moreover, in explaining the legal rationale that justifies making a pooling order effective on the date of the application, another treatise states:

> The jurisdiction of the agency has been brought into play, and the agency possesses the power to preserve the status quo pending the disposition of the application or proceeding. Since the action on the entire matter is part of one agency proceeding, the issuance of an order effective the date that the proceeding began is not, in fact, retroactive any more than a judicial decree effective as of the date judicial demand was made for relief is retroactive.[12]

This rationale seems to apply with equal force in the context of unitization.

In short, we find no persuasive basis for concluding that the commission erred in assuming that it had discretion to direct that a unitization order take effect on the date of filing of the petition for unitization. The remaining question, then, is whether the commission could properly decline to take jurisdiction over Allen's petition by summarily finding that a retroactive order would be inappropriate in his case.

---

8. AS 44.62.510(b).

9. *See, e.g., Texaco, Inc. v. Industrial Comm'n,* 448 N.W.2d 621 (N.D.1989); *Ward v. Corporation Comm'n,* 501 P.2d 503 (Okla.1972); *Barton v. Cleary Petroleum Corp.,* 566 P.2d 462 (Okla.App. 1977); *Bennion v. Utah State Bd. of Oil, Gas & Mining,* 675 P.2d 1135 (Utah 1983). *But see Exxon Corp. v. Thompson,* 564 So.2d 387 (La. App.1990); *Buttes Resources Co. v. Railroad Comm. of Texas,* 732 S.W.2d 675, 683 (Tex.App. 1987). *See generally* 1 Bruce M. Kramer & Patrick H. Martin, *The Law of Pooling and Unitization* § 13.03, at 13–7 to 13–24.3 (3d ed.1992).

10. *See, e.g., Ward,* 501 P.2d at 507:

> To impose this denial without granting the right to participate in production of the unit well, as of the time the non-drilling owners were prohibited from drilling, is the taking by the State of their property without due process in violation of the Fourteenth Amendment to the Constitution of the United States.

*See also* Kramer & Martin, *supra* note 9, § 13.03, at 13–7 to 13–24.3.

11. Howard R. Williams & Charles J. Meyers, *Oil and Gas Law* § 940, at 644 (1992).

12. Kramer & Martin, *supra* note 9, § 13.03, at 13–9.

Certain language in the commission's decision on rehearing suggests that various considerations of policy led it to regard Allen's status as an overriding royalty owner to be unworthy of protection by a retroactive unitization order. For example, in finding Allen's status as overriding royalty holder to be an "independent reason" against granting automatic retroactivity, the commission observed, "[s]ince an overriding royalty holder would have no right directly to apply for an extension of a lease, it would be incongruous to recognize an overriding royalty holder's right to extend a lease through petitioning for compulsory unitization." The commission also emphasized that overriding royalty holders do not have "correlative rights"; it thereby implied that protecting Allen's interests fell outside the primary goals of unitization that the commission had mentioned in its original order of dismissal.

Having expressed these doubts about the appropriateness of using unitization to protect royalty interests, the commission proceeded to consider the merits of Allen's petition. Although the commission assumed that it had the power to order retroactive unitization in "appropriate circumstances," it found that "[n]o such circumstances appear here." Accordingly, the commission dismissed Allen's petition, concluding that "[t]he statutory goals of AS 31.05—preventing waste, protecting correlative rights, and ensuring a greater ultimate recovery of oil and gas—do not require or favor retroactive effect in this case."

But this conclusion is problematic. While the statutory provisions governing unitization certainly concentrate on protecting the owners of rights of production—owners of correlative rights [13]—they by no means ignore the rights of persons holding lesser interests. Indeed, AS 31.05.110(b) expressly directs the

commission to provide for such ownership interests in its unitization orders:

If upon the filing of a petition ... and after notice and hearing, ... the commission finds [grounds for unitization], ... it shall make a finding to that effect and make an order ... providing for the unitization ... upon the terms and conditions, as may be shown by the evidence to be fair, reasonable, equitable, and which are necessary or proper to protect, safeguard and adjust the respective rights and obligations of the several persons affected, *including* royalty owner, *owners of overriding royalties,* oil and gas payments, carried interests, mortgages, lien claimants and others, as well as the lessees.[14]

On rehearing, the commission clarified its position, noting that

the issue of retroactive application involves different and much more limited considerations than those involved in the underlying merits of a compulsory unitization petition. The Commission has not prejudged the latter at all; it has simply noted that, assuming that the merits were to be decided in favor of compulsory unitization, no basis has been shown for such a decision to be made retroactive.

Yet under AS 31.05.060 and AS 31.05.110(a), the commission was required to hear and decide properly filed petitions concerning unitization. And notably, in expressly providing protection for the rights of owners of overriding royalty interests, AS 31.05.110(b) contemplates that the commission will make provision for these interests based on the evidence produced at a hearing on the merits of unitization; it requires that upon finding grounds for unitization "after notice and hearing," the commission must "protect, safeguard, and adjust" these interests insofar "as may be shown by the evi-

---

13. *See* AS 31.05.110(a) (allowing unitization agreements to "protect the correlative rights of persons owning interests in the tracts of land affected"). AS 31.05.170(2) defines "correlative rights" as

the opportunity afforded, so far as it is practicable to do so, to the owner of each property in a pool to produce without waste the owner's just and equitable share of the oil or gas, or both, in the pool; being an amount, so far as

can be practically determined, and so far as can practically be obtained without waste, substantially in the proportion that the quantity of recoverable oil or gas, or both under the property bears to the total recoverable oil or gas or both in the pool, and for such purposes to use the owner's just and equitable share of the reservoir energy.

14. AS 31.05.110(b) (emphasis added).

dence to be fair, reasonable, equitable, and ... necessary." [15]

■ As the commission's findings make clear, the commission, considering the information at hand before it conducted a hearing on the merits of unitization, deemed retroactivity "inappropriate" because the particular "circumstances appear[ing]" in Allen's case failed to show any "basis for such a decision." But the absence of any apparent basis to issue a retroactive unitization order did not place Allen's petition beyond the commission's jurisdiction; it simply indicated a potential lack of merit—a possibility that he would not prevail on one aspect of his petition for unitization.

■ Allen's petition was properly filed, was within the commission's jurisdiction, and could not be deemed moot as long as retroactivity was within the commission's discretion to order. And since the apparent lack of circumstances justifying retroactivity reflected on the merits of Allen's petition, not on the commission's power to hear it, the

15. *Id.*

possibility of retroactivity could not properly be eliminated without determining the merits of the petition for unitization. Yet the commission treated retroactivity as a jurisdictional issue, ordering dismissal without hearing evidence on the merits of unitization. It erred in so doing.

## IV. CONCLUSION

Because we find that Allen is entitled to a hearing on the merits of his unitization petition, we REVERSE the judgment of the superior court and REMAND the case for a hearing.

EASTAUGH, J., not participating.