*Notice:  This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| PLC, LLC and MH2, LLC, | ) | |
| | ) | Supreme Court No. S-17500 |
| Appellants, | ) | |
| | ) | Superior Court No. 3KN-17-00650 CI |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, | ) | |
| DEPARTMENT OF NATURAL | ) | No. 7514 – April 9, 2021 |
| RESOURCES, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Jennifer K. Wells, Judge.

Appearances:  William M. Bankston and Suzanne A. Adler, Bankston Gronning Brecht P.C., Anchorage, for Appellants. Jason Hartz and Emily A. Feenstra, Assistant Attorneys General, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for Appellee.

Before:  Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices.  [Borghesan, Justice, not participating.]

BOLGER, Chief Justice.

## I.  INTRODUCTION

PLC, LLC, as well as its co-party MH2, LLC, (collectively PLC) holds an overriding royalty interest in a State oil and gas lease in the Ninilchik Unit.  The unit

operator applied to expand a subset of that unit called the Falls Creek Participating Area. After some back and forth over the extent of the expanded area, the Department of Natural Resources (DNR) approved the expansion. The lease area in which PLC holds royalty interests was included in the original application by the unit operator, but it was left out of the approved application. PLC appealed the decision to DNR's Commissioner (the Commissioner), who dismissed the appeal on the grounds that PLC lacked standing.

PLC appealed to the superior court, which affirmed the Commissioner's decision. Because PLC has a financial stake in DNR's decision whether to approve the unit operator's proposal for unit expansion to include the PLC-associated lease, we conclude PLC has standing, reverse the superior court decision, and remand to the agency for further consideration consistent with this opinion.

## II. FACTS AND PROCEDURAL HISTORY

### A. The Expansion Of The Falls Creek Participating Area

PLC holds an overriding royalty interest (ORRI) in ADL 384314, a State oil and gas lease (PLC's lease). This interest entitles PLC to a percentage of royalties from the oil and gas produced by the lease at the surface, when and if the lease becomes productive.[1]

PLC's lease is part of the Ninilchik Unit operated by Hilcorp Alaska, LLC. The unit is made up of three participating areas. Each participating area consists of the acreage above a hydrocarbon reservoir and includes the leases contained in that acreage.[2] As the reservoir is explored and hydrocarbons extracted, the participating area expands

---

[1] *See Gottstein v State, Dep't of Nat. Res.*, 223 P.3d 609, 611 n.3 (describing royalty payments and ORRIs).

[2] 11 Alaska Administrative Code (AAC) 88.185(26) (2021); 11 AAC 83.351(a) (2018).

and contracts to better match the reservoir that lies below.[3]  To expand or contract a participating area, the unit operator must apply to DNR for approval.[4]

In 2016 Hilcorp applied to expand the Falls Creek Participating Area, including an 80-acre portion of PLC's lease in the proposed expansion.  Hilcorp stated that "[o]nly acreage that has been proven to contribute to the production of natural gas has been included in this application."  DNR opened the issue to public comment, and PLC submitted a letter to DNR.  PLC requested that DNR expand the area even further, to encompass more than the 80 acres of PLC's lease already included in Hilcorp's proposal.  In support of its argument that the participating area should be further expanded, PLC attached various reports and geological information to its comment.

When reviewing Hilcorp's application, DNR applied a method to determine the likelihood of hydrocarbon presence under the expanded participating area that was different than Hilcorp's method. DNR proposed modifications to the expansion to reflect the areas its methodology identified as likely to contain hydrocarbons.  Hilcorp agreed to the modifications and submitted a revised application, which DNR approved in May 2017.  The approved application did not include the 80 acres from PLC's lease.  DNR's justification was that those 80 acres, despite being included in Hilcorp's original expansion application, were not "reasonably estimated to be capable of producing" natural gas in paying quantities.

B.     Appeal To The Commissioner

PLC appealed the decision to the Commissioner in June 2017, arguing the methodology first used by Hilcorp to determine the participating area was more accurate than that used by DNR, and DNR was therefore wrong to not approve the original

---

[3]      11 AAC 83.351(c).

[4]      *Id.*

application. PLC also argued that DNR had erred and violated 11 AAC 83.351(c) by modifying the expansion plan to exclude PLC's lease, because Hilcorp had asserted PLC's acreage was "proven to contribute" to the production of natural gas.[5] PLC argued Hilcorp's well files supported this assertion of productivity; it specifically pointed to the Falls Creek #6 well, which PLC claimed was drilled diagonally into its lease and which Hilcorp had reported to be producing natural gas.

The Commissioner denied PLC's appeal in July 2017, reasoning an ORRI holder like PLC held a "nonpossessory interest in a percentage of a production at the surface, free of costs," and thus lacked standing to appeal a decision regarding unit expansion. The Commissioner did not address PLC's substantive arguments. The Commissioner explained:

> If and when the operator chooses to produce from [PLC's lease], PLC/MH2 will then have a right to a share of that production. But as a nonpossessory interest in production, an ORRI does not provide PLC/MH2 with an interest in whether the operator produces from that lease as part of one particular participating area or another.

## C. Appeal To The Superior Court

PLC appealed to the superior court, which agreed that PLC lacked standing to appeal to the Commissioner. The superior court reasoned that PLC was not "aggrieved by" DNR's actions[6] but that PLC would be "if the participating area was

---

[5] 11 AAC 83.351(c) provides: "A participating area must be expanded to include acreage reasonably estimated through use of geological, geophysical, or engineering data to be capable of producing or contributing to the production of hydrocarbons in paying quantities . . . ."

[6] AS 44.37.011(b) ("If a person is aggrieved by a decision of the Department of Natural Resources . . . the person may appeal to the commissioner.").

being contracted." The superior court concluded that ORRI holders lack standing to appeal an expansion of the participation area.

The superior court struck a document from the appeal record that PLC had attached to its brief as "Appendix A." Appendix A, entitled "the Report of Sundry Well Operations," contained publicly available data from the Alaska Oil and Gas Conservation Commission (AOGCC). DNR moved to strike the appendix because it was not part of the administrative record, arguing that it was "never submitted to or considered by the agency." PLC suggested the Appendix A data contradicted DNR's conclusion that hydrocarbons were not being extracted from the area under its lease. PLC contended that considering the information in Appendix A was proper and necessary because similar information from a confidential geological report submitted by Hilcorp to DNR was missing from the record. But the superior court granted the State's motion to strike.

### D. Allegations Of Impropriety

Shortly after the superior court's order, but while DNR's motion for attorney's fees was still pending, the State Department of Law received an application for employment from the superior court judge's law clerk. The application included a draft copy of the superior court's decision as a writing sample. The writing sample was nearly identical to the final superior court decision. The Department of Law provided a copy of the writing sample to counsel for PLC.

PLC requested a hearing and discovery, arguing the law clerk's submission created the appearance of impropriety. The superior court then issued a notice to the parties, with an attached affidavit from the superior court judge. The judge apologized for conduct calling into question the integrity of the judiciary but denied any ex parte contact. She explained she had given the law clerk permission to use the decision as a writing sample because all disputed issues had been resolved and the decision was a matter of public record. The judge asserted her clerk did not apply for these particular

positions until after drafting the opinion, and the judge did not know of the applications when she issued the opinion. The judge emphasized that while opinion writing is "always a collaborative process," she was "solely responsible for this opinion" and did not delegate her analysis or decision-making.

PLC withdrew its motion for a hearing and filed a motion for relief from judgment.[7] PLC noted the law clerk had redacted party names from draft orders used as writing samples for previous job applications to the Department of Law, but did not do so here. PLC highlighted three typographical errors in the draft decision uncorrected in the final decision, as well as one corrected with white-out, suggesting the superior court judge may not have properly reviewed the opinion before signing it. The superior court denied PLC's motion for relief from judgment.

PLC now appeals.

## III. STANDARD OF REVIEW

In an administrative appeal, we review the agency decision directly without deference to the superior court's decision.[8] We review the superior court's decisions appealed here — the motion to strike for improper supplementation of the administrative

---

[7] PLC titled its request for relief as a "motion for relief from judgment" under Alaska Civil Rule 60. But as the superior court was hearing the case as an appellate court, this matter more closely resembles a "petition for rehearing" under Alaska Appellate Rule 506. *See* Alaska R. App. P. 601(c) ("On any point not addressed in Part Six, procedure in appeals to the superior court shall be governed by the provisions of Parts Two and Five of these rules.").

[8] *Alaska Crude Corp. v. State, Dep't of Nat. Res., Div. of Oil & Gas*, 261 P.3d 412, 418-19 (Alaska 2011).

record,[9] the petition for rehearing,[10] and the award of attorney's fees[11] — all for abuse of discretion. We find abuse of discretion in regards to an award of attorney's fees only where the award is "arbitrary, capricious, manifestly unreasonable, or stemmed from an improper motive."[12]

Whether PLC has standing hinges on the definition of the words "aggrieved by" in AS 44.37.011(b).[13] We review an agency interpretation of statutory terms using one of two standards: reasonable basis or independent judgment.[14] When an agency's adjudication of a regulated party's claim requires resolution of policy questions within the agency's area of expertise, the reasonable basis standard applies.[15] Under the reasonable basis standard, we "give[] deference to the agency's interpretation so long as

---

[9] *Cf. Alvarez v. Ketchikan Gateway Borough*, 28 P.3d 935, 938 (Alaska 2001) (reviewing denial of motion to supplement for abuse of discretion).

[10] *Id.*

[11] *Griswold v. Homer Bd. of Adjustment*, 440 P.3d 248, 252 (Alaska 2019).

[12] *Alaskan Adventure Tours, Inc. v. City & Borough of Yakutat*, 307 P.3d 955, 960 (Alaska 2013) (quoting *Wagner v. Wagner*, 183 P.3d 1265, 1266-67 (Alaska 2008)).

[13] AS 44.37.011(b) states: "If a person is aggrieved by a decision of the Department of Natural Resources not made by the commissioner and is otherwise eligible to seek the commissioner's review of the decision, the person may appeal to the commissioner."

[14] *Matanuska-Susitna Borough v. Hammond*, 726 P.2d 166, 175 (Alaska 1986).

[15] *Marathon Oil Co. v. State, Dep't of Nat. Res.*, 254 P.3d 1078, 1082 (Alaska 2011).

it is reasonable."[16] But when the agency's specialized knowledge and experience are not particularly relevant to the issue at hand, we substitute our own judgment.[17]

The State argues the reasonable basis standard of review should apply here because an ORRI holder's standing to challenge a unitization decision is intertwined with the management of Alaska's oil and gas resources. We agree that many aspects of oil and gas law are so embedded with policy nuance as to require deference to agency expertise.[18] But that is not so here. Standing is a fundamental legal concept that determines who can and cannot pursue legal claims. Even in the complicated administrative arena of oil and gas law, we apply our independent judgment to interpret a statutory standing requirement.[19]

## IV. DISCUSSION

### A. PLC Has Standing To Challenge DNR's Unitization Decision.

When confronted with a question of standing, we ask whether the litigant is "a 'proper party to request an adjudication of a particular issue.' "[20] In answering that question, we "interpret the concept [of standing] broadly" with an eye toward increased

---

[16] *Matanuska-Susitna Borough*, 726 P.2d at 175.

[17] *Marathon Oil*, 254 P.3d at 1082.

[18] *See id.* (applying reasonable basis standard of review to DNR Commissioner's interpretation of AS 38.05.180(aa) because whether to allow retroactive application of certain statutory royalty provisions was within DNR's area of expertise).

[19] *See Allen v. Alaska Oil & Gas Conservation Comm'n*, 1 P.3d 699, 701 (Alaska 2000) (applying independent judgment to interpret statutory standing requirement to appeal AOGCC decision on compulsory unitization).

[20] *Trs. for Alaska v. State, Dep't of Nat. Res.*, 736 P.2d 324, 327 (Alaska 1987) (quoting *Moore v. State*, 553 P.2d 8, 23 n.25 (Alaska 1976)).

access to justice.[21] We generally recognize two types of standing: citizen-taxpayer and interest-injury.[22] But in some highly regulated areas, like land use and resource management, the legislature has limited standing by statute.

Alaska Statute 44.37.011(b) establishes the standing requirement for appealing DNR decisions: "If a person is aggrieved by a decision of the Department of Natural Resources not made by the [C]ommissioner and is otherwise eligible to seek the [C]ommissioner's review of the decision, the person may appeal to the [C]ommissioner." Both parties apparently agree that PLC's eligibility to appeal to the Commissioner hinges on whether PLC is "aggrieved."[23] This statute does not define the word "aggrieved," but the legislature has used the same word to define standing in other contexts.[24] In *Griswold v. Homer Board of Adjustment* we recognized that by limiting standing to those "aggrieved" by municipal decisions, the legislature eliminated citizen-taxpayer standing but left interest-injury standing intact.[25] We therefore noted that "[d]eciding whether a person is 'aggrieved' in a land use case . . . still resembles a traditional standing inquiry."[26] Although we decided *Griswold* in a different regulatory context, the same

---

[21] *Kanuk ex rel. Kanuk v. State, Dep't of Nat. Res.*, 335 P.3d 1088, 1092 (Alaska 2014).

[22] *Id.*

[23] AS 44.37.011(b); *cf.* 11 AAC 02.010(e) ("An eligible person affected by a [DNR] decision . . . that the commissioner did not sign or cosign may appeal the decision to the commissioner . . . .").

[24] *See, e.g.*, AS 29.40.060 (concerning judicial review for decisions of municipal bodies).

[25] 440 P.3d 248, 252 (Alaska 2019).

[26] *Id.* (quoting AS 29.40.060).

analysis applies here. The State seems to agree, as it relies on the framework of interest-injury analysis to argue that PLC is not "aggrieved."

To establish interest-injury standing, a litigant must show: (1) "a 'sufficient personal stake' in the outcome of the controversy"[27] and (2) "an interest which is adversely affected by the complained-of conduct."[28] The State argues that, as an ORRI holder, PLC has no right to participate in unit management decisions and thus lacks a sufficient personal stake in the outcome of a participating area expansion. We disagree.

### 1. PLC has a sufficient personal stake because had DNR approved the unit operator's original proposed expansion, PLC's lease would have been included, resulting in a direct financial benefit.

An ORRI does not provide PLC any right to participate in unit management decisions; under the Ninilchik unit operating agreement, the unit operator has the sole right to apply for an expansion of a participating area. But unit operators are not the only entities with a stake in the boundaries of a participating area. The financial result of unitization is to distribute the profits of production from a subsurface reservoir to the interest holders in leases overlying that reservoir.[29] This includes the holders, like PLC, of overriding royalty interests. Thus PLC's stake is clear: if acreage from its lease is

---

[27] *Keller v. French*, 205 P.3d 299, 304 (Alaska 2009) (quoting *Ruckle v. Anchorage Sch. Dist.*, 85 P.3d 1030, 1040 (Alaska 2004)).

[28] *Id.* (quoting *Alaskans for a Common Language, Inc. v. Kritz*, 3 P.3d 906, 915 (Alaska 2000)).

[29] *See* 11 AAC 83.371 (2018) (providing for allocation of production and costs among leases in unit area once approved by the Commissioner).

included in the participating area, PLC gets paid, while if its acreage is excluded, it does not.[30]

The State argues that, if gas is being produced from PLC's lease as alleged by PLC, then PLC is entitled to payment whether or not its lease is included in the expansion. The State suggests PLC should sue the unit operator in superior court to recoup any missing payments. But the availability of a remedy in an alternative proceeding does not negate standing in this proceeding. The possibility of PLC obtaining some amount of money by pursuing a separate legal action does not negate that, if DNR had agreed to include PLC's lease in the unit expansion, PLC would currently be paid under an allocation formula.[31]

To support the State's argument that an ORRI holder has no interest in a unitization decision, the State cites an Interior Board of Land Appeals decision, *Stanley Mollerstuen et. al.*[32] The Interior Board of Land Appeals held ORRI holders lacked standing to appeal because the unit agreement in question provided the unit operator "the exclusive right . . . of exercising any and all rights of the parties" to the agreement; the Board observed that if ORRI holders "have a problem regarding the unit operator's expansion of the unit, their dispute is with the unit operator."[33] *Mollerstuen* has some factual similarity to this case. But its general pronouncement that ORRI holders can never have standing to contest a regulator's decisions does not square with our standing

---

[30] *See* 11 AAC 83.351(c) ("A revised division of interest or formula allocating production and costs must be submitted for approval under 11 AAC 83.371 at the time of expansion or contraction of a participating area.").

[31] *See id.*

[32] 146 IBLA 1 (1998).

[33] *Id.* at 5.

precedent, which emphasizes a broad interpretation of standing in favor of increased access to justice.[34]

The State asks us to follow *Mollerstuen* and declare that any dispute PLC has is with Hilcorp, the unit operator. The State posits that because PLC's predecessor long since relinquished any operating interest, PLC cannot now force Hilcorp, the operating interest holder, to explore and produce from PLC's lease. This is correct but not relevant. PLC does not claim Hilcorp should be forced to produce from its lease. Indeed, PLC claims Hilcorp is already producing from PLC's lease.

The State also argues an ORRI holder's interest attaches only when hydrocarbons are produced at the surface. But PLC claims gas has already been produced from beneath its lease. Gas is being produced from the reservoir beneath the Falls Creek Participating Area. If that reservoir extends beneath PLC's lease, it has an interest in realizing profits from its ORRI. So while the State presents the issue as whether an ORRI holder generally has a sufficient personal stake in unit management decisions, the real question is whether PLC has a sufficient personal stake in DNR's decision to exclude the acreage in which PLC has an ORRI from the Falls Creek Participating Area. Because the outcome of DNR's decision affects PLC's interest, it does have such a stake.

This does not conflict with our prior cases considering the rights of ORRI holders. In *Allen v. Alaska Oil & Gas Conservation Commission* ORRI holders

---

[34]    *See Kanuk ex rel. Kanuk v. State, Dep't of Nat. Res.*, 335 P.3d 1088, 1092-93 (Alaska 2014); *cf. Griswold v. Homer Bd. of Adjustment*, 440 P.3d 248, 254 (Alaska 2019) (determining Griswold met a statutory standing requirement by producing evidence showing municipally-enabled reduced setbacks on neighboring property diminished his enjoyment of his properties half a mile away).

unsuccessfully petitioned for forced unitization the day before their leases expired.[35] The AOGCC dismissed the ensuing appeal as moot, but we disagreed because a retroactive unitization order would operate to extend the ORRI holders' leases.[36] We noted AOGCC had conceded standing and, in a footnote, "express[ed] no view on how the issue would be decided in the absence of a concession by the commission."[37]

In *Gottstein v. State, Department of Natural Resources* we affirmed dismissal of a lease's ORRI holders' due process claims in relation to DNR's approval of a unit operator's proposed development plan excluding the lease from development.[38] The lease was set to expire if not explored and it did so after the commissioner approved the plan.[39] On appeal by the lease's ORRI holders, the superior court upheld the commissioner's decision, and we affirmed.[40] On the issue of standing, we cited *Allen*, stating again that we expressed "no view on how the issue [of standing] would be decided," had the issue been raised below.[41] In response to the ORRI holders' due process claim, we determined "approval of the [plan] neither deprived nor infringed on

---

[35]     1 P.3d 699, 700 (Alaska 2000).

[36]     *Id.*

[37]     *Id.* at 702 n.7. The State argues AOGCC's standing provision, which allows an "interested person" to petition AOGCC, is broader than DNR's standard, under which a person must be "aggrieved by" a decision. That may be true but would not preclude a determination that PLC has standing if PLC can show the requisite interest and injury to qualify as aggrieved.

[38]     223 P.3d 609, 622 (Alaska 2010).

[39]     *Id.* at 612, 616-18.

[40]     *Id.* at 610, 618, 620.

[41]     *Id.* at 620 n.22.

[the] overriding royalty interest" in the lease, describing the ORRI holders' property interests as unchanged by the decision and noting the working interest holders had the same right to develop the lease as before the plan was approved.[42]

The State argues that here, just as in *Gottstein*, an ORRI holder contests the Commissioner's approval of a unit operator's proposal that fails to advance the ORRI holders' interests. Because we concluded in *Gottstein* that DNR's approval did not "deprive or infringe on" an ORRI, the State would have us conclude that DNR's action could not affect PLC's ORRI.

But *Gottstein* answered a question of ORRI holders' due process rights, not their standing. A party need not prove an agency has infringed upon or deprived it of its fundamental rights just to establish it has an appreciable personal stake in an administrative action. And even if the legal questions were identical, the facts in *Gottstein* and this case are fundamentally different. In *Gottstein* the ORRI holders pressed to have the unit operator develop its lease;[43] here, PLC claims the unit operator already has. The *Gottstein* unit operator excluded the ORRI holders' leases from its development plan. Here, the unit operator included PLC's lease in its expansion plan; DNR was the entity that excluded the lease from the expansion.

### 2. PLC's interest is adversely affected by DNR's decision.

To establish interest-injury standing PLC must show "an interest which is adversely affected by the complained-of conduct."[44] PLC undoubtedly has an interest

---

[42]     *Id.* at 622.

[43]     *Id.* at 616.

[44]     *Keller v. French*, 205 P.3d 299, 304 (Alaska 2009) (quoting *Alaskans for a Common Language, Inc. v. Kritz*, 3 P.3d 906, 915 (Alaska 2000)).

in the production of hydrocarbons from beneath its lease, but it must also show that DNR's decision adversely affected that interest.

PLC spends the majority of its brief outlining this alleged injury. PLC relies primarily on Appendix A to show that the bottom hole of a producing well is located beneath its lease. But Appendix A is not in the agency record and was never submitted to or considered by the agency, so the superior court did not abuse its discretion in refusing to consider Appendix A.[45]

The State thus argues that nothing in the record shows that hydrocarbons have been removed from beneath PLC's lease. But this is not entirely true. Hilcorp initially included 80 acres of PLC's lease in its application to expand the participating area and described that acreage as "proven to contribute" to the production of natural gas. PLC's letter to DNR during the public comment period on the original proposed expansion included an argument that the participating area should include even more of PLC's acreage. This letter included geological data that PLC claims justifies its position. And when appealing DNR's approval of the modified expansion, PLC argued that Hilcorp's well files supported Hilcorp's assertion that PLC's acreage had been proven to contribute natural gas; specifically, PLC referenced the publicly available files of the Falls Creek #6 well, which PLC claimed had been drilled diagonally into its lease and which Hilcorp had reported was producing natural gas.

More to the point, PLC is not specifically required to prove hydrocarbons are being removed from beneath its lease to show an adverse affect on its interest. We express no opinion on whether PLC's ultimate position, that the unit expansion should include PLC's lease, is correct. That is a question on the merits the Commissioner is much better situated to resolve. But by showing first that the unit operator applied to

---

[45]     *See infra* IV.B.

expand the unit to include PLC's lease as "proven to contribute" to hydrocarbon production and second that DNR excluded PLC's lease from the expansion, PLC has made a plausible allegation of injury sufficient to establish standing here.

The State argues PLC's alleged injury is only theoretical and standing cannot be based on theoretical harm, citing *Tesoro Corp. v. State, Department of Revenue*.[46] In *Tesoro*, however, the alleged harm was much more abstract than it is here. To attack a taxation structure, Tesoro made up a hypothetical example of an entity that would be impermissibly taxed on revenue exceeding its total earnings.[47] We rejected that argument; Tesoro's reality did not align with the hypothetical injury it described.[48] But here PLC does not concoct a hypothetical entity that would be harmed by the State's action. Instead it claims to have actually lost revenue as a result of DNR's decision to exclude its acreage from the participating area. This is not the kind of hypothetical harm we cautioned against using to establish standing in *Tesoro*.

Hilcorp's application to expand the participating area included acreage from PLC's lease and affirmed that acreage was proven to produce hydrocarbons. DNR's decision to reject that proposal and use a different methodology to define the participating area resulted in the exclusion of PLC's 80 acres from the expansion. Evidence in the record supports that the participating area is producing natural gas in paying quantities. Had PLC's lease been included in the expansion as Hilcorp originally requested, PLC would have been entitled to a share of the profits of production of natural

---

[46]    312 P.3d 830, 845-46 (Alaska 2013) (holding hypothetical harm from alleged inconsistency in taxation regulations was insufficient to confer standing).

[47]    *Id.*

[48]    *Id.*

gas from the entire participating area.[49]  DNR's decision to exclude that acreage resulted in lost revenue to PLC, adversely affecting its financial interests.  This alleged injury is sufficient to satisfy the statutory requirement that PLC be "aggrieved by" DNR's decision.[50]  We thus conclude PLC had standing to appeal DNR's decision to the Commissioner.

> **B.      The Superior Court Did Not Abuse Its Discretion In Striking Appendix A From The Record.**

PLC asserts the superior court abused its discretion by striking Appendix A from the record on appeal.  Appendix A is a 273-page AOGCC well-history file that PLC submitted to the superior court as an attachment to its brief.  PLC did not move that the administrative record be supplemented with the document.  The State moved to strike Appendix A under Alaska Appellate Rules 604(b)(1) and 210(a) because it was not in the record on appeal before the Commissioner.  The superior court granted the State's motion.

The record on appeal from an administrative agency "consists of the original papers and exhibits filed with the administrative agency."[51]  The record also includes information considered by the agency in reaching its decision.[52]  An appellate court will supplement the record only in a few narrow circumstances:  procedural irregularities at the administrative level; indicia of the applicant's right to due process

---

[49]      *See* 11 AAC 83.371 (providing for allocation of production and costs among leases in unit area once approved by Commissioner).

[50]      AS 44.37.011(b).

[51]      Alaska R. App. P. 604(b)(1)(A).

[52]      *Alvarez v. Ketchikan Gateway Borough*, 28 P.3d 935, 939 (Alaska 2001).

having been compromised; or a clear showing that "the proffered evidence would impact the outcome of the case."[53]

PLC concedes that Appendix A was not in the agency record. PLC argues that the record on appeal is incomplete without the material in Appendix A because it proves injury using information that may have been contained in a confidential geological report submitted to DNR but excluded from the record on appeal. But PLC could have presented Appendix A to the Commissioner in its original appeal and chose not to do so. And PLC did not seek to supplement, modify, or correct the record with the unit operator's geological report actually submitted to DNR but missing from the record on appeal.[54]

We considered a similar issue in *South Anchorage Concerned Coalition, Inc. v. Municipality of Anchorage Board of Adjustment*, when the appellant sought to supplement the record on appeal with a scientific report issued after the administrative proceedings concluded.[55] We affirmed the superior court's decision to deny the motion, noting the new report was relevant but not determinative to the outcome.[56] As in *South Anchorage*, Appendix A is unnecessary to our holding here.

---

[53]     *S. Anchorage Concerned Coal., Inc. v. Municipality of Anchorage Bd. of Adjustment*, 172 P.3d 774, 780 (Alaska 2007).

[54]     *See* Alaska R. App. P. 210(e)(2) (providing confidential materials filed below "shall be maintained under seal while they constitute part of a record upon appeal"), (i) (establishing appellate court's power to correct, modify, or supplement the appellate record); Alaska R. App. P. 604(b)(1) (providing agency record on appeal includes "the original papers and exhibits filed with the administrative agency" and establishing that Alaska R. App. P. 210 generally applies to administrative appeals).

[55]     172 P.3d at 779.

[56]     *Id.* at 780, 782.

PLC argues the data contained in Appendix A was "necessarily considered by the Commissioner" and therefore should be included in the record on appeal. PLC cites *Alvarez v. Ketchikan Gateway Borough*, in which a taxpayer appealing a property assessment moved to supplement the record with the borough assessor's complete files on the properties, claiming the board had referred to information from and thus necessarily considered these files in making its decision.[57] We affirmed the superior court's denial of the motion because the record on appeal did contain all materials presented to, considered by, and referred to by the board during its proceedings.[58]

In contrast to *Alvarez,* there is a gap in this record on appeal. Hilcorp submitted a confidential geologic report to DNR as part of its original application to expand the participating area; the cover page of that report appears in the appellate record, while the content is absent. But that fact alone does not give PLC authority to bring new, different evidence before an appellate body. The absence of one document from the record does not give a party the right to attach an entirely different document to an appellate brief in contravention of the appellate rules.[59]

As in *Alvarez*, the record lacks any indication that DNR considered the materials in Appendix A. These materials were not submitted to DNR, and DNR never referenced them when approving the expansion plan. Nor did the Commissioner rely on

---

[57]     28 P.3d at 937, 939.

[58]     *Id.* at 940.

[59]     *See State, Dep't of Nat. Res. v. Transamerica Premier Ins. Co.*, 856 P.2d 766, 776 (Alaska 1993) ("[A]n appellate brief can neither append nor refer to evidence outside the record."); Alaska R. App. P. 210(a) ("Material never presented to the trial court may not be added to the record on appeal."); Alaska R. App. P. 212(c)(1)(G) ("Appellant shall state the facts relevant to each issue, with references to the record as required by paragraph (c)(8) . . . .").

Appendix A in reaching his decision, which was based solely on his interpretation of the rights enjoyed by ORRI holders generally. Similarly, the superior court engaged in a general assessment of the rights of ORRI holders. The contents of Appendix A are irrelevant to both decisions. And Appendix A is unnecessary to our holding on the question of standing. We thus conclude the superior court did not abuse its discretion by striking Appendix A from the record.

### C. The Superior Court Did Not Abuse Its Discretion When It Denied The Motion For Relief From Judgment.

PLC argues the superior court abused its discretion when it denied PLC's motion for relief from judgment. PLC moved for relief from judgment under Alaska Civil Rule 60, contending a job application by the superior court judge's law clerk to the Department of Law created the appearance of impropriety. But because the superior court was acting as an intermediate appellate court, PLC's request is more properly analyzed as a petition for rehearing under Alaska Appellate Rule 506. A party may petition for rehearing when the court "overlooked, misapplied or failed to consider" a directly controlling legal principle or "overlooked or misconceived" a material fact, proposition of law, or material question in the case.[60]

Canon 2 of the Alaska Code of Judicial Conduct states: "In all activities, a judge shall . . . avoid impropriety and the appearance of impropriety. . . ."[61] The test for an appearance of impropriety is stated in the commentary to this canon: "whether the conduct would create in reasonable minds a perception that the judge's ability to carry

---

[60] Alaska R. App. P. 506(a)(1)-(3).

[61] Alaska Code Jud. Conduct Canon 2(A).

out judicial responsibilities with integrity, impartiality, and competence is impaired."[62] We assume without deciding that the law clerk's use of a superior court draft opinion in favor of a party when applying for a job with that party's legal representation created an appearance of impropriety under this test. The question before us is whether such an appearance of impropriety would require vacating this superior court decision.

To determine whether to vacate a judgment tainted by the appearance of impropriety, we apply the factors articulated by the United States Supreme Court in *Liljeberg v. Health Services Acquisition Corp.*: "(1) the risk of injustice to the parties in the particular case; (2) the risk that the denial of relief will produce injustice in other cases; and (3) the risk of undermining the public's confidence in the judicial process."[63] We conclude these factors do not require overturning the superior court's decision in this case.

First, there appears to be little risk of injustice to the parties in this case. PLC expresses concern at the similarity between the issued opinion and the writing sample, noting the released opinion shares three typographical errors with the law clerk's draft and another error was changed with white-out. PLC argues this similarity shows the superior court judge failed to properly review the opinion before publishing it. But there is more to opinion drafting than merely reviewing for typographical errors, and the mere presence of such errors in the final product says little about the judge's role in the decision process. In her affidavit, the judge confirmed she was solely responsible for her decision, stating, "In no way did I delegate my analysis or decision-making to anyone else."

---

[62] Alaska Code Jud. Conduct Canon 2(A) cmt.

[63] *Heber v. Heber*, 330 P.3d 926, 930 (Alaska 2014) (quoting *Vent v. State*, 288 P.3d 752, 757 (Alaska App. 2012) (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988))).

Second, there appears to be little risk that denial of relief will produce injustice in other cases. When the judge gave permission for her clerk to use the draft as a writing sample all underlying issues were resolved, and the decision was already part of the public record. The judge did not know which positions the clerk was applying for when she gave this permission. And the parties have not advised us of any other cases where this clerk's application could have raised an appearance of impropriety.

Finally, we cannot discern any reason this situation should undermine the public's confidence in the judicial process. In response to PLC's motion, the superior court judge fully disclosed the circumstances of her decision to allow the clerk's use of the draft opinion as a writing sample, and she acknowledged she had exercised poor judgment because the clerk effectively used a draft opinion affirming DNR's decision to apply to DNR's "law firm" very shortly after that opinion was issued. But the judge confirmed she had exercised independent judgment in reaching her decision, and she was unaware the clerk was applying to this position when she issued the opinion.

We therefore conclude the superior court did not abuse its discretion by denying PLC's motion for relief from judgment.[64] But we hope publication of this opinion will minimize the possibility of this situation happening again.

## V. CONCLUSION

Because we conclude PLC has standing to appeal to DNR's Commissioner, we REVERSE the superior court's decision and REMAND the matter to DNR for further proceedings consistent with this opinion. We VACATE the grant of attorney's fees to the State.

---

[64]     Because we hold PLC has standing to appeal DNR's decision on the merits, the State is not entitled to costs and fees under Alaska Appellate Rule 508. We thus decline to comment on the merits of PLC's objections to the superior court's fee order.